IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

COURTHOUSE NEWS SERVICE,

Plaintiff,

v.

MICHAEL GOULD, *in his official capacity as Collin County District Clerk*; DAVID TRANTHAM, *in his official capacity as Denton County District Clerk*; MEGAN LAVOIE, *in her official capacity as Director for the Texas Office of Court Administration*

Defendants.

Court Case No.   4:24-cv-00368

**COMPLAINT FOR PRELIMINARY AND
PERMANENT INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff, Courthouse News Services ("Courthouse News"), by and through its undersigned attorneys, alleges as follows against Defendants, Michael Gould, in his official capacity as Collin County District Clerk ("Gould"); Hon. David Trantham, in his official capacity as Denton County District Clerk ("Trantham"); Megan LaVoie, in her official capacity as Director for the Texas Office of Court Administration ("LaVoie") (collectively "Defendants").

**INTRODUCTION**

1.     Plaintiff Courthouse News brings this action challenging Defendants' practice of restricting access to new e-filed civil petitions filed with the Collin and Denton County District Courts when they are received and withholding access until after the completion of clerical processing by local court staff.

2.     E-Filing is mandatory for all attorneys filing new petitions in civil cases across all state district courts. While not required, non-attorney filers are encouraged to file electronically as

1

well. To facilitate statewide e-filing, the Texas Office of Court Administration ("OCA") procured a contract with an e-filing vendor, Tyler Technologies, Inc. ("Tyler"), to provide e-filing to all Texas courts through Tyler's File & Serve system, which is branded as "e-File Texas" for use in Texas.

3. The Texas e-filing system—File & Serve—works off a central component called the Electronic Filing Manager ("EFM"), which receives and houses documents submitted by filers throughout the state. E-filed petitions remain in the EFM until local court staff have completed administrative processing, which typically culminates in the petition being "accepted," but sometimes results in the petition being "returned for correction" or "rejected." District courts can use a separate Tyler product called the Press Review Tool to enable the press and public to view new e-filed petitions while they sit in the EFM awaiting processing. Otherwise, the new e-filed petitions sit in the EFM, effectively sealed, until local court staff are able to log into their computer workstations and process them.

4. The OCA has contracted with Tyler to provide the Press Review Tool to each district court that requests it. The Travis County District Court implemented the Press Review Tool in September 2022, and it has operated successfully since then to provide the press and public with on-receipt access to new e-filed civil petitions.

5. The current Technology Standards promulgated by the Texas Judicial Council for Information Technology state that "[a]bsent extraordinary circumstances, clerks must accept, return for correction, or reject documents as so authorized on the same business day they are received by the clerk's office and no later than the next business day when circumstances make it impracticable to do so on the same business day." Technology Standards v8.0, § 4.8.3 (Feb. 2024). As a practical matter, however, newly e-filed civil petitions in some district courts routinely remain

in the EFM until at least the day after the court receives them. Fortunately, district court staff taking a long time to complete administrative processing of e-filed civil petitions is not problematic as long as the district court has implemented the Press Review Tool to enable the press and public to access new petitions irrespective of processing status.

6. On January 6, 2024, Courthouse News wrote to the district court clerks for the counties of Dallas, Collin, and Denton requesting that they implement the Press Review Tool to provide access to new e-filed civil petitions when they are received by the court. **Exhibits 1-3.** The Dallas County District Court clerk agreed to this request, and Dallas County is currently in the process of configuring and implementing the Press Review Tool. The clerks for the Collin and Denton County District Courts did not respond to Courthouse News' letters, and they continue their practice of restricting access to new e-filed civil petitions until after completion of clerical processing.

7. Courthouse News challenges Defendants' policy and practice of withholding public and press access to new civil petitions e-filed in Collin and Denton counties until after the completion of administrative processing by local District Clerk staff. Courthouse News seeks a declaratory judgment declaring Defendants' policies and practices that affect delays in access to newly e-filed civil petitions are unconstitutional, and a preliminary and permanent injunction prohibiting Defendants from continuing those policies and practices.

## JURISDICTION AND VENUE

8. Courthouse News' claims arise under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, Title 42 U.S.C. § 1983, *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief). Defendants are subject to personal jurisdiction in this District.

9. Venue is proper in this District under 28 U.S.C. § 1391(b), and in this Division, because the District Clerks in Collin and Denton counties operate in this District and in this Division, and the Director of the OCA is responsible for procuring and supplying the statewide e-filing and public access systems used by these other two defendants. A substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this District and in this Division. The First Amendment violations giving rise to this action took place, and continue to take place, in the offices of each of the Defendants.

## PARTIES

10. Courthouse News is a nationwide news service founded almost 30 years ago. Courthouse News now employs approximately 240 people, most of them editors and reporters, covering state and federal trial and appellate courts in all 50 states.

11. Defendant Michael Gould is the District Clerk for Collin County District Court and is named as a defendant herein in that official capacity. Defendant Gould, in his official capacity as District Clerk, is responsible for, among other things, access to new civil petitions filed in Collin County and has the ability to provide access at the time of receipt. Acting in his official capacity, Defendant Gould and those acting under his direction and supervision are directly involved with and responsible for the restriction in access to new petitions experienced by Courthouse News, other members of the press, and the public, which acts reflect the official policies and practices of his office. Defendant Gould and those acting under his direction have the ability to provide access to new civil petitions e-filed in Collin County District Court at the time of receipt.

12. Defendant David Trantham is the District Clerk for Denton County District Court and is named as a defendant herein in his official capacity. Defendant Trantham, in his official capacity as District Clerk, is responsible for, among other things, access to new civil petitions filed

in Denton County and has the ability to provide access at the time of receipt. Acting in his official capacity, Defendant Trantham and those acting under his direction and supervision are directly involved with and responsible for the restriction in access to new petitions experienced by Courthouse News, other members of the press, and the public, which acts reflect the official policies and practices of his office. Defendant Trantham and those acting under his direction have the ability to provide access to new civil petitions e-filed in Denton County District Court at the time of receipt.

13.     Defendant LaVoie, in her official capacity as Administrator of the OCA, is responsible for, among other things, the administration of the statewide e-filing system used by Texas Courts, and public access to court records through those systems, including through any systems licensed from or otherwise provided by third parties. Defendant LaVoie and those acting under her direction have the ability to provide access to new civil petitions at the time of receipt. Attached as **Exhibit 4** is a true and correct copy of an amendment to the statewide e-filing contract, signed by Defendant Lavoie on June 24, 2022, between OCA and Tyler pursuant to which the OCA authorized Tyler to provide pre-processing access to new e-filed civil petitions in all district courts of Texas through the Press Review Tool. The ability of Courthouse News or any county district court to use the Press Review Tool is contingent on the OCA providing it through its contract with Tyler.

14.     Defendants' actions, as alleged in this Petition, are under the color of Texas law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

15. Defendants are sued in their official capacities only. Courthouse News seeks relief against Defendants as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

## FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

### A. Courthouse News Reports Daily News From Texas Courts.

16. Courthouse News offers its readers a variety of publications. Its New Litigation Reports contain original, staff-written summaries of significant new civil lawsuits, and are sent to subscribers via e-mail each evening. Its *Daily Brief* covers state and federal appellate rulings throughout the nation, including all United States Supreme Court and federal circuit decisions and significant rulings from the federal district courts.

17. Courthouse News also publishes a freely available website at www.courthousenews.com featuring news reports and commentary. The website functions much like a print daily newspaper with articles rotating on and off the page in a 24-hour news cycle. Roughly 30,000 people read the Courthouse News website each day.

18. Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, including: *The Mercury News, ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR), NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*,

United Press International (UPI), *USA Today*, *U.S. News and World Report*, and the YouTube news channel. American, Canadian, and New Zealand radio shows have also interviewed Courthouse News' reporters.

19.     Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices, and news outlets such as: The Associated Press, *The Atlanta Journal Constitution*, *The Boston Globe*, *Chicago Tribune*, CNN, *Denver Post*, *Detroit Free Press*, International Consortium of Investigative Journalists, Fox Entertainment Group, *Honolulu Civil Beat, Las Vegas Review-Journal*, *Los Angeles Times*, North Jersey Media Group, *Pacific Coast Business Times*, *Philadelphia Business Journal*, *Phoenix New Times*, Pinterest, *Plymouth Independent*, *Portland Business Journal*, *St. Paul Business Journal*, *The Salt Lake Tribune*, *The San Jose Mercury News*, *Seattle Times*, *San Antonio Express News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, Walt Disney Company, *The Washington Post*, and Warner Bros.

20.     Nationwide, educational institutions that subscribe to Courthouse News reports include Boston University, Columbia Journalism Investigations, MIT School of Management, Stanford University, University of Chicago, University of Maryland – College of Journalism, University of North Carolina at Chapel Hill, University of Virginia School of Law, and Drake University Law Library.

21.     In Texas, *The Dallas Morning News* and *San Antonio Express-News* subscribe, as well as the iHeart Media chain of 850 radio stations. A total of seven television stations subscribe, KEYE-TV, KTVT-11 (Ft. Worth), KVUE-TV (Austin), KXAN News (Austin), NBC5 (Ft. Worth) and WFAA-TV (Dallas). Governmental subscribers include the Dallas City Attorney's Office, State Bar of Texas, Office of the General Counsel and the City of San Antonio Attorney's Office. Baylor College and the Texas Association of School Boards also subscribe along with Texas-based

corporations such as Energy Transfer, Cook Children's Health Care System, DHA Housing Solutions for North Texas, Hunt Oil Company, Mewbourne Oil Company, and Whole Foods.

22. In its Texas New Litigation Reports, Courthouse News covers general civil litigation, focusing on actions brought against business entities and public institutions. Its coverage of Texas includes new litigation filed in district courts in Collin and Denton counties.

23. Courthouse News does not report on or seek to review the small number of new civil petitions that are statutorily confidential or otherwise not open to the public, or petitions that are accompanied by a motion to seal. Such petitions are screened away from press and public access by Defendants' e-filing software.

24. Collin and Denton District Courts have not implemented the Press Review Tool available under OCA's contract with Tyler. To prepare the new litigation reports that cover Collin and Denton County District Courts, Courthouse News reporters go to the courts' websites for docket information and then proceed to re:SearchTX, the statewide site run by OCA through a contract with Tyler, to see full text of petitions, paying 10 cents per page. However, the petitions are not available via these platforms — or by any other means — until after court staff have completed administrative processing.

25. Given the nature of the coverage in Courthouse News' New Litigation Reports and its other news publications, any delay in the ability of a reporter to obtain and review new petitions necessarily holds up Courthouse News' reporting of new controversies for its readers.

26. For the final quarter of 2023, all the new civil petitions e-filed in Collin and Denton County District Courts were restricted until after local staff processed them, with more than half of the new civil petitions e-filed in those courts in effect sealed for one or more days after filing.

**B. The First Amendment Right of Access Attaches to Civil Petitions When the Court Receives Them.**

27. A right of access grounded in the First Amendment applies to non-confidential civil petitions.

28. A new petition serves as the opening bell in a legal fight. A longstanding tradition in American courts gives reporters access to new civil petitions when they cross the clerk's counter and before administrative processing. This allows the public to hear about new cases quickly, when they are still newsworthy and likely to be the subject of public attention and discussion.

29. News coverage operates in a daily cycle where news events, including newly filed petitions, occur during the day and are reported that afternoon and evening, after which newsmakers and reporters sleep, only to start the cycle again the next day. When news is delayed until the next day or longer, it is devalued by the delay. Just as day-old bread is less likely to be consumed, the news in day-old petitions is less likely to be reported and read, because it is "old news." *See Courthouse News Service v. Planet* ("*Planet III*"), 947 F.3d 581, 585 (9th Cir. 2020) ("The peculiar value of news is in the spreading of it while it is fresh").

30. Traditionally, at courts across the country, new civil petitions were made available when they crossed the counter so they could be reviewed by journalists who visited the courthouse to report on the day's news. Intake clerks would set new civil petitions aside for press review as they came across the intake counter. The box on the counter that held those petitions was often available to anyone who was interested. This tradition was affirmed by Eighth Circuit Judge Bobby Shepherd during during oral arguments in Courthouse News Serv. v. Gilmer et al. (8th Cir. No. 21-2632), a case involving the same issues as here: "There was a time when — and some in this room may remember it — when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

31. Courthouse News' experience in Texas is no different from, and is consistent with, this nationwide experience and tradition. When it began covering the Harris County district court in 1999, Courthouse News' reporter was allowed to go behind the counter in the clerk's office to view and report on the days' newly filed petitions as they were received by the court. Courthouse News expanded its coverage to Dallas County district court in 2000, at which time journalists were allowed to review new civil petitions on a long wooden table located behind the counter in the clerk's office as soon as the new petitions crossed the intake counter. In 2003, Courthouse News expanded its coverage to Travis County district court and found a similar tradition of access—newly-filed petitions were kept for press review in a large stack located behind the horseshoe-shaped counter where the reception clerk worked.

32. Public access to new petitions allows the public to supervise the judicial process by learning of parties to the dispute, alleged facts, issues for trial, and relief sought. The access also allows the public to understand the activity of the courts, brings accountability to the court system, and informs the public on matters of public concern. When a petition is withheld from the public, it leaves the public unaware that a claim has been levelled and state power has been invoked.

33. The analysis of an alleged violation of the First Amendment right of access is a two-step process. The first step is to determine whether, as a general matter, there is a right of access to the particular proceeding or documents at issue. If the answer to that question is "yes," the court proceeds to the second step, which is to determine if the restriction on access satisfies Constitutional scrutiny. *See, e.g.*, *Courthouse News Serv. v. Planet*, 947 F.3d at 581, 589-97 (9th Cir. 2020) ("*Planet III*") (discussing and applying two-step process established by *Press-Enterprise Co. v. Superior Ct.* ("*Press-Enterprise II*"), 478 U.S. 1 (1986)); *Courthouse News v. Jackson,* 2009 WL 2163609, (S.D. Tex. July 20, 2009).

34. To answer the question posed by the first step, courts examine whether experience and logic support the existence of the right of access, *Press Enterprise II*. "There is no dispute that, historically, courts have openly provided the press and general public with access to civil petitions." *Schaefer*, 440 F. Supp. 3d at 557; *accord Bernstein*, 814 F.3d at 141 ("Petitions have historically been publicly accessible by default . . . . Logical considerations also support a presumption of public access.").

35. Courthouse News has also collected evidence showing that, in states where it covers the courts in person on a regular basis, there is a history of access to new civil actions upon receipt of the pleading regardless of whether court staff have completed clerical processing in every region of the United States—north (Michigan and Wisconsin), south (Alabama, Arkansas, Georgia, Louisiana, Tennessee, Texas, and Virginia), central (Colorado, Illinois, Nebraska, Ohio, Oklahoma, and Utah), east (Connecticut, New Jersey, New York, Pennsylvania, and Vermont), and west (Alaska, Arizona, California, Hawaii, Nevada, Oregon, and Washington). This evidence "demonstrat[es] that there is a long history of courts making petitions available to the media and the public soon after they are received"—"rather than after it is 'processed'"—"regardless of whether such courts use paper filing or e-filing systems." *Courthouse News Serv. v. Planet*, 2016 WL 4157210, at *12-13 (C.D. Cal. May 26, 2016).

36. Applying the "experience and logic" test, courts across the nation have recognized the existence of a qualified First Amendment right of access that attaches to non-confidential civil petitions upon their receipt by a court. *See, e.g.*, *Courthouse News Serv. v. Schaefer*, 2 F. 4th 318, 328 (4th Cir. 2021); *Planet III*, 947 F.3d at 589; *Courthouse News Serv. v. New Mexico Admin. Off. of Cts* ("*New Mexico AOC*"), 53 F.4th 1245, 1266–69 (10th Cir. 2022); *see also Courthouse News Serv. v. O'Shaughnessy*, 2023 U.S. Dist. LEXIS 48712 (S.D. Ohio 2023) ("This case law and

Courthouse News' evidence that state and federal courts throughout the nation and Ohio have traditionally provided access to petitions on receipt, lead the Court to conclude that petitions have been traditionally accessible to the public and press."); *Courthouse News Serv. v. Forman,* 2022 WL 2105910, at *5  (N.D. Fla. June 10, 2022) ("under the experience and logic test, a qualified First Amendment right of access applies to non-confidential civil complaints"); and *Courthouse News v. Jackson*, 2009 WL 2163609, at *5 (S.D. Tex. July 9, 2009) ("there is a presumption in favor of public access to judicial records.").

37. Accordingly, the First Amendment provides the press and public with a presumptive right of access to newly filed civil petitions that attaches when the petition is filed, *i.e.*, when it is submitted to the court.

**C. Defendants' No-Access-Before-Processing Policy Infringes Upon Courthouse News' First Amendment Rights.**

38. Where the qualified First Amendment right of access attaches to a particular court process or document, as it does with new civil petitions, the right attaches upon the court's receipt of the document, and the press and public generally have a right of contemporaneous access. *See, e.g.*, *New Mexico AOC*, 53 F.4th at 1269 ("[A] necessary corollary of the right to access is a right to timely access."); *Planet III*, 947 F.3d at 588, 591 (holding the qualified right of access to newly filed civil actions attaches when the lawsuit is filed, *i.e.*, when it is received by the court); *Courthouse News Serv. v. Jackson*, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) ("In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous."); *Courthouse News Serv. v. Tingling*, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016); *Schaefer*, 440 F. Supp. 3d at 559 (the public and press have a "contemporaneous right

of access" to newly filed civil actions—meaning "on the same day as filing, insofar as practicable").

39. Turning to the second analytical step of a claim alleging a violation of the First Amendment right of access, after the court determines the right of access attaches to a particular record or proceeding, a presumption of access arises that may be restricted only if "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14; *accord Planet III*, 947 F.3d at 596; *Bernstein*, 814 F.3d at 144; *Schaefer*, 440 F. Supp. 3d at 559-60.  Here, Defendants' policies are not essential to preserve higher values and are not narrowly tailored.

40. Since Texas' adoption of e-filing, access delays have become pervasive in district courts across the state.  The district courts for the counties of Collin and Denton do not use the Press Review Tool or otherwise make newly e-filed civil petitions available upon receipt by the statewide e-filing system. Instead, they effectively seal the petitions while they sit in a database— the EFM— allowing access only after court staff have processed them.  As a direct result, these courts withheld access to more than half of new civil petitions until at least the day after they were e-filed, and sometimes longer.

41. These access delays at the Collin and Denton County district courts are unnecessary and easily avoidable. Defendants need only implement the Press Review Tool readily available through the OCA's contract with Tyler.

42. Processing new petitions is not the problem.  All e-filing courts must conduct some administrative processing of new filings.  As was the case in the paper world, access in e-filing courts is delayed only if courts withhold new civil petitions until after court staff complete administrative processing.  Because most courts do not complete these clerical tasks for all the

13

day's new civil actions on the day of filing, no-access-before-processing policies prevent the press and public from learning about a substantial percentage of new civil petitions until at least the day after filing, at which point the information is old news and less likely to capture the public's attention.

43. Courts that provide access to new e-filed petitions as they are received, regardless of whether court staff have completed clerical processing, include nearly all federal district courts and state courts in Alabama, Arizona, California (nearly all e-filing courts, covering 85% of the state's population), Connecticut, Florida, Georgia (courts in Atlanta metropolitan area), Hawaii, Nevada (in the state's biggest court in Las Vegas), New York, Ohio (Cleveland and Columbus), Texas (Austin), Utah, Vermont, and Washington (Tacoma).

44. The Missouri and New Mexico state courts are both currently in the process of developing systems that, once implemented, will also provide access to new e-filed complaints as they are received, and regardless of whether court staff have completed clerical processing. In addition, Iowa state courts recently agreed to provide on-receipt access to new e-filed complaints on a statewide basis.

45. Courts use a variety of vendors to provide on-receipt access, including Tyler (which provides the Press Review Tool available to Texas district court clerks), Journal Technologies, Tybera, Granicus, OLIS, PeachCourt and ProWare.  Other courts – including courts in Hawaii, Washington, Connecticut, New York, Missouri, and individual superior courts in California – use home-grown access systems developed in-house.

46. Courts provide on-receipt access through terminals at the courthouse or through a controlled online site or, most often, both. Courts control online access to new petitions by requiring applications from users, requiring compliance with terms of use, requiring user names

and passwords, retaining the ability to revoke approval if necessary, and, in many courts, requiring payment of a subscription fee.

47. In Texas, the Dallas County District Court is in the process of configuring the Press Review Tool for implementation and anticipates providing pre-processing access to non-confidential civil petitions that is similar to, if not the same as, the access currently provided by Travis County.

48. Despite Courthouse News' request, the district courts for the counties of Collin and Denton have not implemented the Press Review Tool and instead continue to withhold access to new e-filed petitions until after processing. As a result, Courthouse News continues to experience significant delays in gaining access to new civil petitions e-filed in the Collin and Denton County district courts.

**COUNT ONE – VIOLATION OF U.S. CONST. AMEND. I AND 42 U.S.C. § 1983**

49. Courthouse News incorporates the allegations of Paragraphs 1-48 herein.

50. Defendants' actions under color of state law, including without limitation their policies and practices of withholding newly filed, non-confidential civil petitions from press and public view until after administrative processing, and the resulting denial of timely access to new civil petitions upon receipt for filing, deprives Courthouse News, and by extension its subscribers, of their right of access to public court records secured by the First Amendment to the United States Constitution.

51. The qualified First Amendment right to access new civil petitions filed in Collin and Denton District Courts arises the moment those petitions are filed, and access may be restricted only if the restriction is essential to preserve an overriding government interest and is narrowly tailored to serve that interest. For Defendants' policies and practices to survive *Press-*

*Enterprise II*'s two-prong balancing test, Defendants "must demonstrate that (1) 'there is a "substantial probability' that [an overriding government interest] would be impaired by immediate access'; and (2) 'no reasonable alternatives exist to "adequately protect" that government interest.'" *New Mexico Admin. Off. of the Cts.*, 53 F.4th at 1270. Defendants cannot satisfy either prong of this test with respect to the policies and practices alleged in this complaint.

52. Courthouse News has no adequate remedy at law to prevent or redress Defendants' unconstitutional actions and will suffer irreparable harm as a result of Defendants' violation of its First Amendment rights. Courthouse News is therefore entitled to a declaratory judgment and a preliminary and permanent injunction to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers.

## PRAYER FOR RELIEF

WHEREFORE, Courthouse News prays for judgment against Defendants as follows:

1. A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendants' policies and practices that knowingly affect delays in access to newly filed civil unlimited petitions, including, inter alia, their policy and practice of denying access to petitions until after administrative processing, are unconstitutional under the First and Fourteenth Amendments to the United States Constitution because these policies and practices constitute an effective denial of timely public access to new civil petitions, which are public court records to which the First Amendment right of access applies;

2. A preliminary and permanent injunction against Defendants, including their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction or under their control, prohibiting them from continuing their policies and practices

that deny Courthouse News timely access to new non-confidential civil petitions, including, inter alia, their policy and practice of denying access to petitions until after administrative processing;

3. An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. All other relief the Court deems just and proper.

Date: April 26, 2024　　　　　　　　　　Respectfully submitted,

**JACKSON WALKER L.L.P.**

By: */s/ Matt Dow*
Matt Dow
Attorney-In-Charge
Texas Bar No. 06066500
mdow@jw.com
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Telephone: (512) 236-2000
Facsimile: (512) 236-2002

John K. Edwards
Texas Bar No. 24002040
jedwards@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221

ATTORNEYS FOR PLAINTIFF
COURTHOUSE NEWS SERVICE