UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE | § | |
| | § | |
| v. | § | CIVIL NO. 4:24-CV-368-SDJ |
| | § | |
| MICHAEL GOULD, ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

Courthouse News Service ("CNS") brought this action under the First Amendment and 42 U.S.C. § 1983 against twenty-one Texas district court clerks ("District Clerk Defendants") and Megan LaVoie, in her official capacity as Director of the Texas Office of Court Administration ("OCA"), (collectively, "Defendants"). (Dkt. #11 ¶¶ 8, 10–32). CNS challenges Defendants' alleged practice of "restricting access to new e-filed civil petitions filed with the District Clerk Defendants when the petitions are received and withholding access until after the completion of clerical processing by local clerk staff." (Dkt. #11 ¶ 1).

Several motions are pending before the Court. Defendants Megan LaVoie, Jon Gimble, Michael Gould, David Trantham, Melisa Miller, and Clarissa Webster have submitted motions to dismiss.[1] Defendants Joanna Staton, Casie Walker, Jamie Smith, and John D. Kinard have filed motions to dismiss or, in the alternative, to transfer venue.[2] And Defendant Jon Gimble has filed an Opposed Alternative Motion to Transfer Venue Under 28 U.S.C. § 1404(a).[3] CNS has responded to each

[1] (Dkt. #65, #80, #85, #87, #101, #102).
[2] (Dkt. #92, #105, #122, #177).
[3] (Dkt. #81).

of these motions, and most Defendants have filed replies. Having considered the briefing, the record, and the applicable law, the Court finds that Defendants LaVoie, Gimble, Gould, Trantham, Miller, and Webster's motions to dismiss should be **GRANTED**, Defendants Staton, Walker, Smith, and Kinard's motions should be **GRANTED in part** and **DENIED in part as moot**, and Defendant Gimble's motion to transfer venue should be **DENIED as moot**.

## I. Background

### A. CNS's Claims

CNS is a nationwide news service. (Dkt. #11 ¶ 10). It has multiple publications, some of which include coverage of civil actions filed in the district courts of the District Clerk Defendants. (Dkt. #11 ¶ 35–36, 41). CNS disclaims any interest in confidential, sealed, or otherwise nonpublic petitions. (Dkt. #11 ¶ 42).

Electronic filing is mandatory for all attorneys filing new civil petitions in Texas state district courts. (Dkt. #11 ¶ 2). OCA has contracted with Tyler Technologies, Inc. ("Tyler") to provide statewide e-filing services through Tyler's "File & Serve" system, branded as "e-File Texas." (Dkt. #11 ¶ 2). One component of e-File Texas is the Electronic Filing Manager ("EFM"), which receives and temporarily houses electronic filings. (Dkt. #11 ¶ 3). E-filed petitions remain in EFM until local court staff complete administrative processing. (Dkt. #11 ¶ 3). It is the Texas Judicial Council for Information Technology's policy that, absent extraordinary circumstances, clerks must complete that processing on the same business day the petitions are received by the clerk's office, and no later than the next business day,

by either accepting, returning for correction, or rejecting the petitions. (Dkt. #11 ¶ 5). CNS claims that, in practice, e-filed civil petitions routinely remain in EFM until at least the day after the district clerk receives them. (Dkt. #11 ¶ 5).

District clerks may optionally use a separate Tyler product—the Press Review Tool ("PRT")—which allows the press and public to view e-filed petitions that are awaiting review in EFM. (Dkt. #11 ¶¶ 3–4). If they do not use PRT, the press and public cannot access a clerk's petitions until they are processed through EFM. (Dkt. #11 ¶ 3).

Though OCA has contracted to make it available to them, the District Clerk Defendants have not implemented PRT. (Dkt. #11 ¶¶ 4, 32, 43). CNS alleges that this renders "anywhere from twenty percent to ninety percent of the new civil petitions e-filed in those courts in effect sealed for one or more days after filing." (Dkt. #11 ¶ 45). CNS asserts that these delays are "unnecessary and easily avoidable" because the District Clerk Defendants need only implement PRT, which is already available to them. (Dkt. #11 ¶ 60).

To review petitions in the District Clerk Defendants' courts, CNS reporters use the courts' websites and OCA's statewide platform—re:SearchTX. (Dkt. #11 ¶ 43). Like everywhere else, those sources do not have petitions until staff complete administrative processing in EFM. (Dkt. #11 ¶ 43).

CNS alleges that Defendants' policies and practices of withholding access to newly filed petitions until they are processed through EFM violates 42 U.S.C. § 1983 by infringing on its, and its subscribers', right under the First Amendment to the

United States Constitution to access public court records. (Dkt. #11 ¶ 69). CNS contends that the qualified First and Fourteenth Amendment right to access civil petitions attaches when the petitions are filed, and that Defendants' policies constitute an impermissible restriction on that right. (Dkt. #11 ¶¶ 56–58, 70).

CNS seeks (1) a declaratory judgment that Defendants' policies and practices are unconstitutional under the First and Fourteenth Amendments; (2) a preliminary and permanent injunction prohibiting Defendants from continuing those policies and practices; and (3) an award of costs and reasonable attorney's fees against the District Clerk Defendants. (Dkt. #11 Prayer ¶¶ 1–4).

**B. Defendants' Motions**

Defendants have moved to dismiss CNS's complaint for lack of Article III standing, [4] arguing that CNS has failed to allege a concrete, particularized injury-in-fact traceable to the conduct of any specific Defendant. Defendants point to CNS's complaint, which relies on the same generalized allegations against each of the District Clerk Defendants without identifying any specific incident in which a CNS reporter sought access to a filing and was denied or delayed.[5] Some Defendants also argue that, even taken as true, CNS's allegations about processing time are exaggerated and unhelpful because CNS does not specifically use *business* days or hours.[6] In addition, certain Defendants have claimed that their internal reviews have

---

[4] (Dkt. #65 at 9–12); (Dkt. #80 at 1–3); (Dkt. #85 at 5–7); (Dkt. #87 at 5–7); (Dkt. #92 at 8–10); (Dkt. #101 at 6–8); (Dkt. #102 at 11–17); (Dkt. #105 at 2–5); (Dkt. #122 at 23–24); (Dkt. #177 at 13–16).

[5] (Dkt. #85 at 6–7); (Dkt. #87 at 6–7); (Dkt. #101 at 6–8); (Dkt. #102 at 12–14); (Dkt. #105 at 2–5); (Dkt. #122 at 23–24).

[6] (Dkt. #80 at 5); (Dkt. #164 at 6–7); (Dkt. #165 at 10–11).

revealed average processing times of between thirty-one minutes to four hours, and that the vast majority of petitions are processed within one business day.[7]

Defendants further contend that CNS's aggregate statistical ranges—which CNS applies uniformly across all counties without differentiation—are disputed, unauthenticated, and untethered to any specific act of seeking and being denied access, and therefore cannot establish the particularized injury required by Article III.[8] Defendants also argue that CNS cannot establish traceability because its complaint attributes to all Defendants collectively the same generalized "practice" of withholding access, without pleading that specific conduct by any specific Defendant caused a specific harm to CNS.[9] For her part, Defendant Megan LaVoie argues that CNS has not alleged any injury traceable to any action or inaction by OCA, whose statutory authority is limited to consultation, recommendations, and assistance, and whose role in the alleged access delays is entirely derivative of the independent decisions of local district clerks.[10]

CNS responds that it has adequately alleged standing as a media entity with a concrete interest in timely access to newly filed civil petitions; that the First Amendment right of access attaches at the moment a petition is received by the court, not after processing is complete; and that its statistical data, though presented in a

[7] ((Dkt. #80 at 5 n.2); (Dkt. #87 at 6 n.5); (Dkt. #102 at 15–16 n.7); (Dkt. #122-1 at 183–84).

[8] (Dkt. #65 at 9); (Dkt. #80 at 5); (Dkt. #85 at 7); (Dkt. #87 at 6–7); (Dkt. #92 at 6); (Dkt. #102 at 13, 18–19 & n.10); (Dkt. #122 at 18–20); (Dkt. #177 at 14).

[9] (Dkt. #65 at 10–11); (Dkt. #80 at 1–3); (Dkt. #85 at 6); (Dkt. #87 at 6); (Dkt. #92 at 9–10); (Dkt. #101 at 7); (Dkt. #102 at 12–14); (Dkt. #105 at 4–5); (Dkt. #122 at 17–18); (Dkt. #177 at 14–15).

[10] (Dkt. #65 at 10–12)

wide range, is sufficient at the pleading stage to establish a plausible injury.[11] CNS further argues that its injury is statewide in nature and that OCA's administration of the Texas e-filing system, including LaVoie's execution of a contract amendment authorizing use of PRT, renders LaVoie a proper defendant whose conduct is fairly traceable to CNS's inability to obtain pre-processing access across the state.[12] CNS has offered to amend its complaint to provide county-specific data in the event the Court finds its current allegations insufficient.[13]

## II. Legal Standard

"Federal courts are courts of limited jurisdiction" and may exercise only such jurisdiction as is expressly "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). A federal district court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "The burden of proof for a Rule 12(b)(1) motion to

[11] (Dkt. #113 at 3–5); (Dkt. #114 at 15–16); (Dkt. #115 at 3–5); (Dkt. #116 at 3–5); (Dkt. #126 at 3–5); (Dkt. #135 at 3–8); (Dkt. #147 at 22–24); (Dkt. #148 at 18–27); (Dkt. #178 at 17–18).

[12] (Dkt. #112 at 8–13).

[13] ((Dkt. #112 at 13); (Dkt. #113 at 5); (Dkt. #114 at 14); (Dkt. #115 at 5); (Dkt. #116 at 5); (Dkt. #126 at 5); (Dkt. #147 at 24); (Dkt. #148 at 21); (Dkt. #178 at 6).

dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995), *aff'd*, 102 F.3d 551 (5th Cir. 1996)). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (citing *Home Builders Ass'n*, 143 F.3d at 1010). In ruling on a Rule 12(b)(1) motion, the court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996)).

When "filed in conjunction with other Rule 12 motions," a court should evaluate jurisdiction before addressing the merits inquiry. *Ramming*, 281 F.3d at 161. Proceeding in that order "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* And because the "doctrine of abstention" involves a court's decision to "decline to exercise or postpone the exercise of its jurisdiction," *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), a court should satisfy itself that a dispute is within its jurisdiction before "turn[ing] to the merits of . . . abstention," *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 715, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996). Abstention is a discretionary determination to not "grant certain types of relief"—a determination a

court can make only if it has jurisdiction to grant relief at all. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Standing is an essential component of that limitation. *Lujan*, 504 U.S. at 560. To establish standing, a plaintiff must demonstrate three elements. *Id.* First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent rather than conjectural or hypothetical. *Id.* Second, there must be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the defendant's actions rather than those of a third party not before the court. *Id.* Third, it must be likely, rather than speculative, that the injury will be redressed by a favorable decision. *Id.* at 561. The plaintiff bears the burden of establishing each element. *Id.*

Critically, "standing is not dispensed in gross." *Murthy v. Missouri*, 603 U.S. 43, 61, 144 S.Ct. 1972, 219 L.Ed.2d 604 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021)). A plaintiff must independently demonstrate standing for each claim asserted against each defendant named. *See id.*

## III. DISCUSSION

CNS has failed to establish Article III standing as to any Defendant for several reasons. At the outset, CNS's complaint fails to allege any specific instance in which

it sought access to a filing from any Defendant's court and was denied or delayed such access. Absent such allegations, CNS has failed to identify any concrete, particularized injury. CNS's allegations of future injury are also deficient because CNS has not established that it is actively seeking any petitions that are likely to be withheld by Defendants. These problems are not fixed by CNS's aggregate statistical allegations, which are undifferentiated across all Defendants and are untethered to any act of seeking and being refused access to court filings. Such generalized allegations do not establish traceability as to any particular Defendant. Because CNS has not identified any specific injury traceable to any specific Defendant, there is no injury to be redressed. Finally, as to Defendant LaVoie, CNS cannot establish standing for the additional reason that neither LaVoie nor OCA have the power to either cause or remedy the alleged injury.

Because CNS lacks standing, the Court will dismiss its complaint without reaching Defendants' abstention arguments, their motions under Federal Rule of Civil Procedure 12(b)(6), or their venue-transfer motions.

**A. Injury-in-fact**

The injury-in-fact requirement for standing has two independently necessary components: concreteness and particularization. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Concreteness requires that an injury actually exist—that it is "real" rather than "abstract." *Id.* at 340. Particularization requires an injury to affect the plaintiff "in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

The Supreme Court has emphasized that, even when faced with a procedural violation or statutory deprivation, courts have a "responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion*, 594 U.S. at 426 (citing *United States v. Eichman*, 496 U.S. 310, 317–18, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990)). An intangible harm can qualify as a concrete injury, but only when it bears a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 424 (quotation marks omitted) (quoting *Spokeo*, 578 U.S. at 341). Generalized grievances—injuries "shared in substantially equal measure by all or a large class of citizens"—do not satisfy the particularization requirement. *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). And a future injury, to be cognizable, must be "*certainly impending*"—a mere possibility is insufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)).

Where a plaintiff asserts an "informational injury"—here, a denial of access to information CNS claims a right to receive—the plaintiff must "at a minimum, . . . fail[] to obtain information 'despite his search for such [information].'" *Huddleston v. FBI*, No. 4:20-CV-447, 2026 WL 2364172, at *7 (E.D. Tex. Aug. 7, 2026) (citing *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 429 (5th Cir. 2013); *see Pub. Citizen v. DOJ*, 491 U.S. 440, 449, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (requiring a showing that a plaintiff sought and was denied specific records to make

a claim under the Freedom of Information Act); *Prisology, Inc. v. Fed. Bureau of Prisons*, 852 F.3d 1114, 1117 (D.C. Cir. 2017) (same). A generalized allegation that a defendant maintains a policy of restricting access to information, without any allegation that the plaintiff itself sought access and was denied, does not establish a concrete, particularized injury. *Cf. Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (rejecting standing based on allegations of a general policy without specific allegations demonstrating that the plaintiff would be directly affected).

CNS's complaint alleges that each Defendant maintains a practice of withholding access to newly e-filed civil petitions until those petitions have been processed through the state's electronic filing system—a process CNS contends can take anywhere from hours to days. (Dkt. #11 ¶¶ 1, 45). CNS further alleges this practice results in "anywhere from twenty percent to ninety percent" of newly filed petitions being withheld from same-day access. (Dkt. #11 ¶ 45). CNS claims this practice violates its First Amendment right of access to court records. (Dkt. #11 ¶ 46).

Neither the Supreme Court nor the Fifth Circuit has found a qualified First Amendment right of access to newly filed, non-confidential civil petitions. However, many federal courts have. *See, e.g.*, *Courthouse News Serv. v. Corsones*, 131 F.4th 59, 66 (2d Cir. 2025); *Courthouse News Serv. v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020); *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 326 (4th Cir. 2021); *Courthouse News Serv. v. Quinlan*, 32 F.4th 15, 19–20 (1st Cir. 2022) (assuming, as the parties agreed, that a qualified right of access exists and that some level of First Amendment scrutiny

applies to processing delays); *Courthouse News Serv. v. Forman*, 606 F.Supp.3d 1200, 1210–11 (N.D. Fla. 2022). The Eighth Circuit has noted, "there is reason to believe that the First Amendment may require access to court-filed documents" even if "there is reason to doubt that it must be lightning fast." *Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 911 n.1 (8th Cir. 2022). Yet, even if it is correct about this legal theory, CNS has failed to establish standing to bring a claim because it has not alleged that it was harmed by any specific Defendant's conduct.

The contrast between CNS's allegations in this case and those that other courts have found sufficient is instructive. In *Quinlan*, the First Circuit reversed the dismissal of a complaint in which CNS alleged that a named reporter visited a specific county court "nearly every business day" during a particular four-week period. 32 F.4th at 18. The reporter specifically requested newly filed complaints on each visit and was regularly told by the clerk that no additional complaints were available. *Id.* Though twenty complaints were filed during those four weeks, the reporter was only permitted to review eight—each after delays ranging from several days to two weeks after being filed. *Id.* CNS's allegations in *Quinlan* thus specifically identified a courthouse, a reporter, dates, requests, and denials of access, clearly establishing that a CNS reporter personally sought and was denied access to filed documents. Similarly, in *Forman*, CNS obtained injunctive relief after presenting specific, empirical data that demonstrated delays in a single identified county and that was gathered by CNS's own reporters over a defined six-month period. 606 F.Supp.3d

at 1209. That data showed that eighty-seven percent of complaints were unavailable on the day of filing and forty-three percent were unavailable for two or more days. *Id.*

Here, CNS's complaint contains no comparable allegations. CNS does not identify any specific filing it was unable to access in a timely manner, any specific date on which it sought records from any particular Defendant's court, or any specific reporter or CNS staff member who attempted to access records and was turned away. The twenty-to-ninety percent range CNS invokes is applied identically to each District Clerk Defendant without differentiation, rendering the range incapable of establishing particularized injury as to any of them. Unlike in *Forman*, CNS here has not offered county-specific delay data gathered through its reporters' documented courthouse visits. Unlike in *Quinlan*, CNS has not alleged that any of its reporters visited any of the District Clerk Defendants' courts, made any specific request for newly filed petitions, or were denied access.

CNS's own briefing confirms this deficiency. In responding to Defendant Webster's motion, CNS acknowledged that its complaint "does not specify where on the spectrum of twenty to ninety percent Ector County District Court falls." (Dkt. #148 at 19). This concession applies with equal force to every other Defendant in this action. CNS's offer to amend its complaint to provide county-specific data underscores rather than cures this problem. The complaint does not contain the allegations necessary to establish standing, and CNS's post-filing offer to supply them confirms that those allegations are absent.[14]

---

[14] In response to several Defendants' motions, CNS offers to amend its complaint to provide specific data for the applicable District Court. (Dkt. #113 at 5); (Dkt. #115 at 5);

CNS's allegations of future injury fare no better. A plaintiff asserting future injury must show that the threatened harm is "certainly impending," not merely possible. *Clapper*, 568 U.S. at 409 (italics and quotation omitted). "Abstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct." *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923)). CNS's allegations of future harm rest entirely on the continuation of each Defendant's processing policy, but CNS has not alleged particularized facts about each Defendant's policy. Nor has CNS alleged that it is actively engaging in activities, such as requesting petitions from the Defendants' courts, such that Defendants' alleged policies threaten to immediately harm CNS. CNS's future injury theory is therefore too speculative to support standing.

**B. Traceability**

Even if CNS had adequately alleged an injury in fact, its complaint fails the traceability requirement as to each Defendant. An injury is "fairly traceable" only if a direct causal connection ties the injury to the defendant's conduct at issue—not to

---

(Dkt. #116 at 5); (Dkt. #126 at 5); (Dkt. #147 at 24); (Dkt. #148 at 21). Because these factual allegations do not appear in CNS's complaint, the Court does not consider them when ruling on the instant motions. *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2020 WL 5946863, at *1 n.3 (N.D. Tex. Oct. 7, 2020) ("This court has repeatedly held that, when ruling on a motion to dismiss, the court does not consider additional facts that are alleged in a response brief but not in the complaint.") (collecting cases); *Elton Porter Marine Ins. Agency v. Markel Am. Ins. Co.*, No. H-11-4432, 2012 WL 2050254, at *2 (S.D. Tex. June 6, 2012) ("[I]t is insufficient to allege further facts in the response to the motion to dismiss; the factual matter must be contained in the pleadings themselves.").

the independent conduct of some third party not before the court. *Lujan*, 504 U.S. at 560. Traceability requires more than a general allegation that a defendant participates in a broader system or policy; the plaintiff must plead that specific conduct by "each defendant" caused an alleged injury. *Murthy*, 603 U.S. at 61.

CNS's complaint attributes the same generalized "practice" of withholding access to all Defendants collectively. No allegation ties any specific delay to any specific Defendant's conduct. CNS cannot establish traceability by alleging that each Defendant is a participant in a statewide practice without specific factual allegations connecting each Defendant's conduct to a concrete harm to CNS. *See id.*

CNS also cannot establish standing based on restrictions experienced by other members of the press or the public. Such "generalized grievances . . . . do not present constitutional 'cases' or 'controversies.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014). A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. To the extent CNS's complaint alleges that Defendants restrict "other members of the press, and the public," (Dkt. #11 ¶ 11), those allegations do not establish CNS's own standing.

**C. Redressability**

CNS's standing fails on the redressability prong as well. A plaintiff must demonstrate that it is "likely, as opposed to merely speculative," that a favorable judicial decision will redress the injury alleged. *Lujan*, 504 U.S. at 561 (quotation omitted).

Where a plaintiff has not established any concrete, particularized past injury traceable to any specific defendant, there is no identified harm for a court order to redress. *See Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 621, 127 S.Ct. 2553, 168 L.Ed.2d 424 (2007) (Scalia, J., concurring) (describing how failure to identify "concrete and particularized harm" results in "traceability and redressability problems"). The Court notes that the district court in *Forman* was able to craft a targeted injunction precisely because CNS had identified the particular conduct of specific defendants in that case that caused a delay. *Forman*, 606 F.Supp.3d at 1226–27. No comparable showing has been made here. Redressability of any future injury is similarly speculative.

**D. Standing as to Defendant Megan LaVoie**

CNS's standing deficiencies are particularly acute with respect to Defendant Megan LaVoie, sued in her official capacity as Administrative Director of OCA. Unlike the District Clerk Defendants, who are at least alleged to directly control access to newly filed petitions in their respective jurisdictions, LaVoie occupies a supervisory and administrative role whose statutory authority is expressly limited to consultation, recommendations, and assistance. *See* TEX. GOV'T CODE §§ 72.023, 72.024. CNS has not alleged an injury-in-fact fairly traceable to any action or inaction by LaVoie, because she does not have the authority to take such an action. Likewise, any such injury would not be redressable by an order directed at her, because she does not have the power to change the policy. Each element of the standing inquiry independently forecloses CNS's claims against LaVoie.

CNS broadly alleges that "access delays have become pervasive in district courts across the state," (Dkt. #11 ¶ 59), and the Defendants' "no-access-before-processing" policies deprive the press and public of timely access to newly filed civil petitions, (Dkt. #11 ¶ 61). These allegations are directed at the District Clerk Defendants' local processing policies—not any specific action taken by LaVoie or OCA. CNS does not identify any instance in which it sought access to a newly filed petition and was denied as a result of any policy, directive, or action attributable to LaVoie. The complaint's generalized, statewide delay allegations are insufficient to establish a concrete and particularized injury as to LaVoie. *See Spokeo*, 578 U.S. at 340; *Clapper*, 568 U.S. at 409; *TransUnion*, 594 U.S. at 423.

To the extent CNS argues that its injury is statewide in nature and therefore necessarily implicates OCA's administration of the Texas e-filing system, that argument conflates the scope of the alleged harm with the identity of the party allegedly responsible for it. An injury perpetuated by a statewide policy does not automatically confer standing against every official who exercises some role in the broader system—particularly where, as here, the alleged injury flows directly from the independent decisions of local court clerks and not from any directive or policy of LaVoie or OCA. *See Murthy*, 603 U.S. at 61 (requiring plaintiffs to "'demonstrate standing for each claim that they press' against each defendant" (quoting *TransUnion*, 594 U.S. at 431)); *Daves v. County of Dallas*, 22 F.4th 522, 542 (5th Cir. 2022) (en banc) ("Standing to sue one defendant does not, on its own, confer standing to sue a different defendant.").

* * *

CNS has failed to establish Article III standing as to any Defendant in this case. Its complaint does not identify a single specific instance in which it sought access to a newly filed civil petition from any of the District Clerk Defendants and was denied or delayed. Its aggregate statistical allegations—a twenty-to-ninety-percent range for all District Clerk Defendants—are untethered to any discrete act of seeking and being refused access, and are therefore insufficient to establish the concrete, particularized injury that Article III requires. CNS's allegations of future injury are equally deficient. Because CNS has not established any concrete past harm traceable to any specific Defendant's conduct, its claim of future injury rests on speculation rather than certainty. Further, because CNS has not identified any specific injury traceable to any specific Defendant, it has not demonstrated that a favorable judicial decision would redress any cognizable harm. CNS's claims against Defendant LaVoie fail for the additional reason that the entirety of CNS's alleged injury flows directly from the independent decisions of the District Clerk Defendants—not from any action attributable to LaVoie or OCA—rendering the causal chain too attenuated to satisfy the traceability requirement. LaVoie's lack of authority to compel the District Clerk Defendants to change their policy means an order from this Court as to her would also fail the redressability prong.

Because CNS lacks standing, the Court does not reach Defendants' arguments regarding abstention, failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or their alternative motions to transfer venue. CNS's complaint is therefore

dismissed without prejudice, and CNS is granted leave to amend to cure the standing deficiencies identified herein.

## IV. Conclusion

For the foregoing reasons, it is **ORDERED** that the motions to dismiss filed by Defendants Megan LaVoie, (Dkt. #65), Jon Gimble, (Dkt. #80), Michael Gould, (Dkt. #85), David Trantham, (Dkt. #87), Melisa Miller, (Dkt. #101), and Clarissa Webster, (Dkt. #102), are **GRANTED**.

It is further **ORDERED** that the motions to dismiss or, in the alternative, to transfer venue, filed by Defendants Joanna Staton, (Dkt. #92), Casie Walker, (Dkt. #105), Jamie Smith, (Dkt. #122), and John Kinard, (Dkt. #177), are **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Defendant Jon Gimble's Opposed Alternative Motion to Transfer Venue Under 28 U.S.C. § 1404(a), (Dkt. #81), is **DENIED as moot**.

It is further **ORDERED** that Plaintiff Courthouse News Service's Amended First Amended Complaint for Preliminary and Permanent Injunctive and Declaratory Relief, (Dkt. #11), is **DISMISSED without prejudice**.

It is further **ORDERED** that Plaintiff Courthouse News Service may file its second amended complaint on or before **October 21, 2026**.

It is further **ORDERED** that the parties shall, on or before **October 30, 2026**, file a proposed scheduling order.

**So ORDERED and SIGNED this 30th day of September, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE