**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

COURTHOUSE NEWS SERVICE,

Plaintiff,

v.

JOANNA STATON, *in her official capacity as Bell County District Clerk*; CASIE WALKER, *in her official capacity as Burnet County District Clerk*; MICHAEL GOULD, *in his official capacity as Collin County District Clerk*; DAVID TRANTHAM, *in his official capacity as Denton County District Clerk*; CLARISSA WEBSTER, *in her official capacity as Ector County District Clerk*; JOHN D. KINARD*, in his official capacity as Galveston County District Clerk*; JAMIE SMITH, *in his official capacity as Jefferson County District Clerk;* RALPH STROTHER, *in his official capacity as McLennan County District Clerk*; MELISA MILLER, *in her official capacity as Montgomery County District Clerk.*

Defendants.

Court Case No. 4:24-cv-00368

**SECOND AMENDED COMPLAINT FOR PRELIMINARY AND**
**PERMANENT INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff, Courthouse News Service ("Courthouse News"), by and through its undersigned attorneys, alleges as follows against Defendants Joanna Staton, in her official capacity as Bell County District Clerk ("Staton"); Casie Walker, in her official capacity as Burnet County District Clerk ("Walker"); Michael Gould, in his official capacity as Collin County District Clerk ("Gould"); Hon. David Trantham, in his official capacity as Denton County District Clerk ("Trantham"); Clarissa Webster, in her official capacity as Ector County District Clerk

("Webster"); John D. Kinard, in his official capacity as Galveston County District Clerk ("Kinard"); Jamie Smith, in his official capacity as Jefferson County District Clerk ("Smith"); Ralph Strother, in his official capacity as McLennan County District Clerk ("Strother"); Melisa Miller, in her official capacity as Montgomery County District Clerk ("Miller") (the District Clerk Defendants are collectively referred to as "Defendants" and each as "Defendant").

## INTRODUCTION

1. The First Amendment to the United States Constitution provides the press and public with a qualified right of access to civil petitions. For new electronically filed (e-filed) civil petitions, the First Amendment right of access attaches when the petition is submitted by the filer and received by the court. Policies and practices that delay access to new petitions following their receipt by the court must be scrutinized under the appropriate constitutional test to determine whether they violate the First Amendment.

2. Plaintiff Courthouse News brings this action challenging Defendants' practices of restricting access to new e-filed civil petitions filed with the District Clerk Defendants when the petitions are received and withholding access until after the completion of clerical processing by local clerk staff.

3. E-filing is mandatory for all attorneys filing new petitions in civil cases across all state district courts. While not required, non-attorney filers are encouraged to file electronically as well. To facilitate statewide e-filing, the Texas Office of Court Administration ("OCA") procured a contract with an e-filing vendor, Tyler Technologies, Inc. ("Tyler"), to provide e-filing to all Texas courts through Tyler's File & Serve system, which is branded as "e-File Texas" for use in Texas.

4. The Texas e-filing system—File & Serve—works off a central component called the Electronic Filing Manager ("EFM"), which receives and houses documents submitted by filers throughout the state. E-filed petitions remain in the EFM until local court staff have completed administrative processing, which typically culminates in the petition being "accepted," but sometimes results in the petition being "returned for correction" or "rejected." The new e-filed petitions sit in the EFM, effectively sealed, until local clerk staff are able to log into their computer workstations and process them. This results in public access to newly e-filed petitions being delayed until after clerks are able to process them, which frequently takes until the following court day and often longer.

5. District clerks have at least two options for providing the press and public with access to new e-filed civil petitions without the delays caused by restricting access until after completion of administrative processing. *See* **Exhibit 1** (eFileTexas training guide for "Auto-Accept & Press Review Tool").[1] First, they can configure the File & Serve system—a/k/a eFileTexas—to automatically accept newly filed petitions as they are submitted by filers, similar to how the vast majority of federal district courts automatically accept new filings through CM/ECF. *See id.* Second, the OCA has contracted with Tyler to provide district clerks the ability to use a separate Tyler product called the Press Review Tool that works in conjunction with eFileTexas to enable the press and public to view new e-filed petitions while they sit in the EFM awaiting processing. The Press Review Tool is available to any district clerk who requests it. Currently, 14 district clerks throughout Texas have elected to use the Press Review Tool and are

---

[1] This document is publicly available from the OCA on the eFileTexas website under "Training for Reviewers" at item no. 3: https://www.efiletexas.gov/reviewers/reviewers.htm.

using it to provide the press and public with on-receipt access to new e-filed civil petitions at their courts.

6. On January 6, 2024, Courthouse News wrote to the district clerks for the counties of Dallas, Collin, and Denton requesting that they implement the Press Review Tool to provide access to new e-filed civil petitions when they are received by the clerks. **Exhibits 2-3** (Collin and Denton only)**.** The Dallas County District Clerk agreed to this request and implemented the Press Review Tool as of May 2024. The district clerks for Bexar, El Paso, Nacogdoches, and Nueces counties received similar letters sent on May 31, 2024. The district court clerks for Bell, Brazoria, Brazos, Burnet, Ector, Ellis, Galveston, Hidalgo, Jefferson, Johnson, McLennan, Midland, Montgomery, Potter, and Taylor counties received similar letters sent on June 21, 2024. **Exhibits 4-10** (Bell, Burnet, Ector, Galveston, Jefferson, McLennan and Montgomery only). The district clerks for Bexar, Brazoria, Brazos, El Paso, Ellis, Hidalgo, Johnson, Midland, Nacogdoches, Nueces, Potter, and Taylor counties all subsequently implemented the Press Review Tool thereby joining Dallas and Travis counties and solving the problem of delayed access to new e-filed petitions at their courts. The District Clerk Defendants did not respond to Courthouse News' letters or refused to implement the Press Review Tool, and they continue their practice of restricting access to new e-filed civil petitions until after completion of clerical processing.

7. Courthouse News challenges each Defendant's policy and practice of withholding public and press access to new civil petitions e-filed in the respective counties for the District Clerk Defendants until after the completion of administrative processing by local District Clerk Defendants' staff. Courthouse News seeks a declaratory judgment declaring that Defendants' policies and practices that effect delays in access to newly e-filed civil petitions are

unconstitutional, and a preliminary and permanent injunction prohibiting Defendants from continuing those policies and practices.

**JURISDICTION AND VENUE**

8. Courthouse News' claims arise under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, Title 42 U.S.C. § 1983, *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief). Defendants are subject to personal jurisdiction in this District.

9. Venue is proper in this District under 28 U.S.C. § 1391(b), and in this Division, because the District Clerks in Collin and Denton counties operate in this District and in this Division, and the District Clerk of Jefferson operates in this District. A substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this District and in this Division. The First Amendment violations giving rise to this action took place, and continue to take place, in the offices of each of the Defendants.

**PARTIES**

10. Courthouse News is a nationwide news service founded more than 30 years ago to report news about civil litigation. Courthouse News now employs approximately 230 people, most of them editors and reporters, covering state and federal trial and appellate courts in all 50 states.

11. Defendant Joanna Staton is the District Clerk for Bell County District Court and is named as a defendant herein in her official capacity. Defendant Staton, in her official capacity as District Clerk, is responsible for, among other things, access to new civil petitions filed in Bell County and has the ability to provide access at the time of receipt. Acting in her official capacity, Defendant Staton and those acting under her direction and supervision are directly involved with and responsible for the restriction in access to new petitions experienced by Courthouse News,

other members of the press, and the public, which acts reflect the official policies and practices of her office. Defendant Staton and those acting under her direction have the ability to provide access to new civil petitions e-filed in Bell County District Court at the time of receipt.

12. Defendant Casie Walker is the District Clerk for Burnet County District Court and is named as a defendant herein in her official capacity. Defendant Walker, in her official capacity as District Clerk, is responsible for, among other things, access to new civil petitions filed in Burnet County and has the ability to provide access at the time of receipt. Acting in her official capacity, Defendant Walker and those acting under her direction and supervision are directly involved with and responsible for the restriction in access to new petitions experienced by Courthouse News, other members of the press, and the public, which acts reflect the official policies and practices of her office. Defendant Walker and those acting under her direction have the ability to provide access to new civil petitions e-filed in Burnet County District Court at the time of receipt.

13. Defendant Michael Gould is the District Clerk for Collin County District Court and is named as a defendant herein in that official capacity. Defendant Gould, in his official capacity as District Clerk, is responsible for, among other things, access to new civil petitions filed in Collin County and has the ability to provide access at the time of receipt. Acting in his official capacity, Defendant Gould and those acting under his direction and supervision are directly involved with and responsible for the restriction in access to new petitions experienced by Courthouse News, other members of the press, and the public, which acts reflect the official policies and practices of his office. Defendant Gould and those acting under his direction have the ability to provide access to new civil petitions e-filed in Collin County District Court at the time of receipt. Defendant Gould is represented by counsel who has made an appearance.

14. Defendant David Trantham is the District Clerk for Denton County District Court and is named as a defendant herein in his official capacity. Defendant Trantham, in his official capacity as District Clerk, is responsible for, among other things, access to new civil petitions filed in Denton County and has the ability to provide access at the time of receipt. Acting in his official capacity, Defendant Trantham and those acting under his direction and supervision are directly involved with and responsible for the restriction in access to new petitions experienced by Courthouse News, other members of the press, and the public, which acts reflect the official policies and practices of his office. Defendant Trantham and those acting under his direction have the ability to provide access to new civil petitions e-filed in Denton County District Court at the time of receipt. Defendant Trantham is represented by counsel who has made an appearance.

15. Defendant Clarissa Webster is the District Clerk for Ector County District Court and is named as a defendant herein in her official capacity. Defendant Webster, in her official capacity as District Clerk, is responsible for, among other things, access to new civil petitions filed in Ector County and has the ability to provide access at the time of receipt. Acting in her official capacity, Defendant Webster and those acting under her direction and supervision are directly involved with and responsible for the restriction in access to new petitions experienced by Courthouse News, other members of the press, and the public, which acts reflect the official policies and practices of her office. Defendant Webster and those acting under her direction have the ability to provide access to new civil petitions e-filed in Ector County District Court at the time of receipt.

16. Defendant John D. Kinard is the District Clerk for Galveston County District Court and is named as a defendant herein in his official capacity. Defendant Kinard, in his official capacity as District Clerk, is responsible for, among other things, access to new civil petitions filed

in Galveston County and has the ability to provide access at the time of receipt. Acting in his official capacity, Defendant Kinard and those acting under his direction and supervision are directly involved with and responsible for the restriction in access to new petitions experienced by Courthouse News, other members of the press, and the public, which acts reflect the official policies and practices of his office. Defendant Kinard and those acting under his direction have the ability to provide access to new civil petitions e-filed in Galveston County District Court at the time of receipt.

17. Defendant Jamie Smith is the District Clerk for Jefferson County District Court and is named as a defendant herein in his official capacity. Defendant Smith, in his official capacity as District Clerk, is responsible for, among other things, access to new civil petitions filed in Jefferson County and has the ability to provide access at the time of receipt. Acting in his official capacity, Defendant Smith and those acting under his direction and supervision are directly involved with and responsible for the restriction in access to new petitions experienced by Courthouse News, other members of the press, and the public, which acts reflect the official policies and practices of his office. Defendant Smith and those acting under his direction have the ability to provide access to new civil petitions e-filed in Jefferson County District Court at the time of receipt.

18. Defendant Ralph Strother is the District Clerk for McLennan County District Court and is named as a defendant herein in his official capacity.[2] Defendant Strother, in his official capacity as District Clerk, is responsible for, among other things, access to new civil petitions filed in McLennan County and has the ability to provide access at the time of receipt. Acting in his

[2] Defendant Strother is the successor to former McLennan County District Clerk Jon Gimble, who was named as a defendant in his official capacity as McLennan County District Clerk in the Amended First Amended Complaint filed by Courthouse News on July 9, 2024 (Dkt. 11).

official capacity, Defendant Strother and those acting under his direction and supervision are directly involved with and responsible for the restriction in access to new petitions experienced by Courthouse News, other members of the press, and the public, which acts reflect the official policies and practices of his office. Defendant Strother and those acting under his direction have the ability to provide access to new civil petitions e-filed in McLennan County District Court at the time of receipt.

19. Defendant Melisa Miller is the District Clerk for Montgomery County District Court and is named as a defendant herein in her official capacity. Defendant Miller, in her official capacity as District Clerk, is responsible for, among other things, access to new civil petitions filed in Montgomery County and has the ability to provide access at the time of receipt. Acting in her official capacity, Defendant Miller and those acting under her direction and supervision are directly involved with and responsible for the restriction in access to new petitions experienced by Courthouse News, other members of the press, and the public, which acts reflect the official policies and practices of her office. Defendant Miller and those acting under her direction have the ability to provide access to new civil petitions e-filed in Montgomery County District Court at the time of receipt.

20. Megan LaVoie was previously named as a defendant in her official capacity as Administrator of the OCA because she is responsible for, among other things, the administration of the statewide e-filing system used by Texas Courts, and public access to court records through those systems, including through any systems licensed from or otherwise provided by third parties. Attached as **Exhibit 11** is a true and correct copy of an amendment to the statewide e-filing contract, signed by Director LaVoie on June 24, 2022, between OCA and Tyler pursuant to which the OCA authorized Tyler to provide pre-processing access to new e-filed civil petitions in all

district courts of Texas through the Press Review Tool. Director LaVoie is not named as a defendant in this Second Amended Complaint because she took the position in this action that the discretion to implement either Auto-Accept or the Press Review Tool rests with each local district court clerk. *See, e.g.,* ECF 65 at 7 ("[D]istrict clerks may enable the Auto-Accept Tool to by-pass the Review Queue, enable the Press Review Tool and/or manually review."); *see also* ECF 65, Exhibits 1 and 2. However, the ability of Courthouse News or any county district court to use either Auto-Accept or the Press Review Tool is contingent on the OCA providing them through its contract with Tyler. Courthouse News reserves the right to rename Director LaVoie as a defendant should circumstances change.

21. Defendants' actions, as alleged in this complaint, are under the color of Texas law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

22. Defendants are sued in their official capacities only. Courthouse News seeks relief against Defendants as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

## FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

### Courthouse News Reports Daily News from Texas Courts

23. Courthouse News offers its readers a variety of publications. Its New Litigation Reports contain original, staff-written summaries of significant new civil lawsuits, and are sent to subscribers via e-mail each evening. Its *Daily Brief* covers state and federal appellate rulings throughout the nation, including all United States Supreme Court and federal circuit decisions and significant rulings from the federal district courts.

24. Courthouse News also publishes a freely available website at www.courthousenews.com featuring news reports and commentary. The website functions much like a print daily newspaper with articles rotating on and off the page in a 24-hour news cycle. Roughly 30,000 people read the Courthouse News website each day.

25. Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, including: *The Mercury News, ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR), NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report*, and the YouTube news channel. American, Canadian, and New Zealand radio shows have also interviewed Courthouse News' reporters.

26. Courthouse News has more than 2,100 subscribers nationwide, including law firms, law schools, government offices, and news outlets such as: The Associated Press, *The Atlanta Journal Constitution*, *The Boston Globe*, *Chicago Tribune*, CNN, *Denver Post*, *Detroit Free Press*, International Consortium of Investigative Journalists, Fox Entertainment Group, *Honolulu Civil Beat, Las Vegas Review-Journal*, *Los Angeles Times*, North Jersey Media Group, *Pacific Coast Business Times*, *Philadelphia Business Journal*, *Phoenix New Times*, Pinterest, *Plymouth Independent*, *Portland Business Journal*, *St. Paul Business Journal*, *The Salt Lake Tribune*, *The*

*San Jose Mercury News*, *Seattle Times*, *San Antonio Express News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, Walt Disney Company, *The Washington Post*, and Warner Bros.

27. Nationwide, educational institutions that subscribe to Courthouse News reports include Boston University, Columbia Journalism Investigations, MIT School of Management, Stanford University, University of Chicago, University of Maryland – College of Journalism, University of North Carolina at Chapel Hill, University of Virginia School of Law, and Drake University Law Library.

28. In Texas, *The Dallas Morning News* and *San Antonio Express-News* subscribe, as well as the iHeart Media chain of 850 radio stations. A total of five television stations subscribe, KEYE-TV (Austin), KTVT-11 (Ft. Worth), KVUE-TV (Austin), KXAN News (Austin), and NBC5 (Ft. Worth). Governmental subscribers include the Dallas City Attorney's Office, State Bar of Texas, Office of the General Counsel and the City of San Antonio Attorney's Office. Baylor College and the Texas Association of School Boards also subscribe along with Texas-based corporations such as Energy Transfer, Cook Children's Health Care System, DHA Housing Solutions for North Texas, Hunt Oil Company, Mewbourne Oil Company, and Whole Foods.

29. In its Texas New Litigation Reports, Courthouse News covers general civil litigation, focusing on actions brought against business entities and public institutions. Courthouse News publishes eight different New Litigation Reports covering the Texas state courts: *Austin Report, Beaumont Report, Dallas State Report, Greater Houston Report, Greater Texas Report, Harris County Report, San Antonio Report,* and *Tarrant County Report*.

30. Courthouse News does not report on or seek to review the small number of new civil petitions that are statutorily confidential or otherwise not open to the public, or petitions that are accompanied by a motion to seal.

31. To prepare the New Litigation Reports and identify new cases that warrant additional coverage, Courthouse News' reporters typically visit their assigned courts either in person or remotely to review the cases filed that day and determine which are of interest to Courthouse News' readers. Courthouse News covers the Texas District Courts primarily through remote daily coverage. The particular manner in which Courthouse News' Texas reporters cover their assigned courts varies according to how the court provides access to newly filed petitions.

32. In Texas, newly e-filed petitions are received into the statewide EFM, where they are held until they are accepted into the district clerk's case management system ("CMS"). As explained and alleged further below, this acceptance can be accomplished either by holding new petitions in the EFM until a local clerk manually processes and "accepts" them into the district court's CMS, or by configuring the EFM to automatically accept them into the CMS.

33. Once an e-filed petition is accepted, it is available to the press and public for viewing remotely online through a statewide database called re:SearchTX,[3] as well as through the district clerks' CMSs, which typically provide public access to accepted petitions through public access terminals located at the courthouses, remotely online through the district courts' websites, or both.

34. Additionally, the Texas district courts that use the Press Review Tool also provide remote access to newly e-filed civil petitions while they are sitting in the EFM awaiting clerk acceptance. At the Texas district courts that use the Press Review Tool, Courthouse News' reporters are able to see and report on newly e-filed civil petitions as the court receives them, without any delay following submission by the filer.

---

[3] Re:SearchTX is a Tyler product procured and supplied by the OCA. It is accessible to the public at https://research.txcourts.gov/

35. At the Texas district courts that do not use the Press Review Tool (or Auto-Accept), Courthouse News' reporters are not able to see and report on newly e-filed civil petitions until after court clerks complete administrative processing and "accept" them, which is often one or more days following submission by the filer. At these courts, there is no way for the press or public to know the new petition exists while it is sitting in the EFM, which makes it impossible for Courthouse News' reporters to request access to any particular petition sitting in the EFM awaiting processing and "acceptance." The press and public learn of the new petitions at these courts only after they are "accepted" by court staff and made available on re:SearchTX or the court's website, at which point any delay in access has already occurred.

36. Given the nature of the coverage in Courthouse News' New Litigation Reports and its other news publications, any delay in the ability of a reporter to obtain and review new petitions necessarily holds up Courthouse News' reporting of new controversies for its readers.

37. Processing new petitions is not the problem. All e-filing courts must conduct some administrative processing of new filings. Courts that use the Press Review Tool or the Auto-Accept configuration still process new civil petitions, but they do not withhold access until that processing is completed. This allows new civil petitions to be read and reported when they are most newsworthy and most capable of commanding public attention.

38. As alleged more particularly below, each Defendant is choosing to enforce a policy and practice of restricting and delaying public access to new e-filed civil petitions until after completion of clerk processing and refusing to implement one of the available alternatives to that policy and practice. Consequently, each Defendant is responsible for the delays in access to new e-filed civil petitions experienced by the press and public at their courts.

**The First Amendment Right of Access Attaches to Civil Petitions When the Court Receives Them**

39. A right of access grounded in the First Amendment applies to non-confidential civil petitions.

40. The analysis of a claim alleging a violation of the First Amendment right of access to court documents typically involves a two-step process. The first step is to determine whether, as a general matter, there is a First Amendment right of access to a particular court proceeding or document. If the answer to that question is "yes," the court proceeds to the second step, which is to determine if the restrictions on access to that court process or document satisfy constitutional scrutiny.

41. To answer the question posed by the first step of the analysis, courts in the Fifth Circuit generally apply the *Press-Enterprise II* "experience and logic" test. *See Texas Trib. v. Caldwell Cnty., Texas*, 121 F.4th 520, 528 (5th Cir. 2024) (citing *Press-Enterprise Co. v. Super. Ct*., 478 U.S. 1, 8 (1986) ("Press-Enterprise II") as setting forth what is now commonly referred to as the 'experience and logic' test for First Amendment right of access). The experience prong asks whether the place and process have historically been open to the press and general public. *Id.* The logic prong considers whether public access plays a significant positive role in the functioning of the particular process in question. *Id.*

42. ***The "Experience" Prong***. The "experience" test under the first prong "does not look to the particular practice of any one jurisdiction, but instead to the experience in that type or kind of hearing throughout the United States." *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 150 (1993).

43. "There is no dispute that, historically, courts have openly provided the press and general public with access to civil complaints." *Courthouse News Serv. v. Schaefer*, 440 F. Supp.

3d 532, 557 (E.D. Va. 2020), aff'd, 2 F.4th 318 (4th Cir. 2021); *accord Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016) ("Complaints have historically been publicly accessible by default ….").

44. A new petition serves as the opening bell in a legal fight. A longstanding tradition in American courts gives reporters access to new civil petitions when they cross the clerk's counter and before administrative processing. This allows the public to hear about new cases quickly, when they are still newsworthy and likely to be the subject of public attention and discussion.

45. Traditionally, at courts across the country, new civil petitions were made available when they crossed the counter so they could be reviewed by journalists who visited the courthouse to report on the day's news. Intake clerks would set new civil petitions aside for press review as they came across the intake counter. The box on the counter that held those petitions was often available to anyone who was interested. This tradition was affirmed by Eighth Circuit Judge Bobby Shepherd during oral arguments in *Courthouse News Serv. v. Gilmer et al.* (8th Cir. No. 21-2632), a case involving the same issues as here: "There was a time when — and some in this room may remember it — when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

46. Courthouse News' experience in Texas is no different from, and is consistent with, this nationwide experience and tradition. When it began covering the Harris County district court in 1999, Courthouse News' reporter was allowed to go behind the counter in the clerk's office to view and report on the day's newly filed petitions as they were received by the court. Courthouse News expanded its coverage to Dallas County district court in 2000, at which time journalists were allowed to review new civil petitions on a long wooden table located behind the counter in the clerk's office as soon as the new petitions crossed the intake counter. In 2003, Courthouse News

expanded its coverage to Travis County district court and found a similar tradition of access—newly filed petitions were kept for press review in a large stack located behind the horseshoe-shaped counter where the reception clerk worked.

47. In other litigation, Courthouse News has collected and filed evidence showing that, in states where Courthouse News covered the courts in person on a regular basis, there is a history of access to new civil petitions upon receipt regardless of whether court staff have completed clerical processing. This history is found in every region of the United States—north (Michigan, Minnesota, and Wisconsin), south (Alabama, Arkansas, Georgia, Louisiana, Tennessee, Texas, and Virginia), middle (Colorado, Illinois, Nebraska, Ohio, Oklahoma, and Utah), east (Connecticut, New Jersey, New York, Pennsylvania, and Vermont) and west (Alaska, Arizona, California, Hawaii, Nevada, Oregon, and Washington). This evidence "demonstrat[es] that there is a long history of courts making complaints available to the media and the public soon after they are received"—"rather than after [they are] 'processed'"—"regardless of whether such courts use paper filing or e-filing systems." *Courthouse News Serv. v. Planet*, 2016 WL 4157210, *12-13 (C.D. Cal. May 26, 2016), aff'd in relevant part, rev'd in part on other grounds, 947 F.3d 581 (9th Cir. 2020).

48. ***The "Logic" Prong***. "Logical considerations also support a presumption of public access." *Bernstein*, 814 F.3d at 141. The logic prong considers whether there is a benefit to keeping the documents or proceedings at issue hidden from the public.

49. The First Amendment right of access exists to enable free and informed discussion about governmental affairs, which includes ongoing judicial proceedings. Courthouse News facilitates those important discussions by visiting courthouses on a daily basis and seeking timely access to newly filed civil petitions in order to report on their contents.

50. The filing of a petition invokes the authority of the people of the United States, and the American people have a right to know that a plaintiff has invoked their power to resolve a dispute and achieve a personal end. The petition is the basis for the dispute and plays a significant role throughout all phases of the litigation.

51. Public access to new petitions allows the public to supervise the judicial process by learning of parties to the dispute, alleged facts, issues for trial, and relief sought. The access also allows the public to understand the activity of the courts, brings accountability to the court system, and informs the public on matters of public concern. When a petition is withheld from the public, it leaves the public unaware that a claim has been levelled and state power has been invoked.

52. Applying the "experience and logic" test, courts across the nation have recognized the existence of a qualified First Amendment right of access that attaches to non-confidential civil petitions upon their receipt by a court. *See, e.g.*, *Courthouse News Serv. v. Schaefer*, 2 F. 4th 318, 328 (4th Cir. 2021); *Courthouse News Serv. v. Planet* ("*Planet III*"), 947 F.3d 581, 589 (9th Cir.2020); *Courthouse News Serv. v. New Mexico Admin. Off. of Cts* ("*New Mexico AOC"*)*,* 53 F.4th 1245, 1266–69 (10th Cir. 2022); *see also Courthouse News Serv. v. O'Shaughnessy*, 2023 U.S. Dist. LEXIS 48712 (S.D. Ohio 2023) ("This case law and Courthouse News' evidence that state and federal courts throughout the nation and Ohio have traditionally provided access to petitions on receipt, lead the Court to conclude that petitions have been traditionally accessible to the public and press."); *Courthouse News Serv. v. Forman,* 2022 WL 2105910, at *5 (N.D. Fla. June 10, 2022) ("under the experience and logic test, a qualified First Amendment right of access applies to non-confidential civil complaints"); and *Courthouse News Serv. v. Jackson*, 2009 WL 2163609, at *5 (S.D. Tex. July 20, 2009) ("there is a presumption in favor of public access to judicial records.").

53. Accordingly, the First Amendment provides the press and public with a presumptive right of access to newly filed civil petitions that attaches when the petition is filed, *i.e.*, when it is submitted to the court.

**Defendants' No-Access-Before-Processing Policies Infringe Upon Courthouse News' First Amendment Rights**

54. Where the qualified First Amendment right of access attaches to a particular court process or document, as it does with new civil petitions, the right attaches upon the court's receipt of the document, and the press and public generally have a right of contemporaneous access. *See, e.g.*, *Courthouse News Serv. v. Omundson*, -- F.4th --, 2026 WL 2603864, at *7 (9th Cir. Sept. 3, 2026) ("[T]he First Amendment right of public access to judicial documents attaches at the time that complaints are filed with the court by the litigant, or put differently, at the time that complaints are received by the court."); *Courthouse News Serv. v. Corsones*, 131 F.4th 59, 66 (2d Cir. 2025) (there is "a presumptive First Amendment right of access to newly filed complaints, which attaches upon a court's receipt of such complaints"); *New Mexico AOC*, 53 F.4th at 1266 (holding that "the right of access attaches when a complaint is submitted to the court.").

55. Turning to the second analytical step of a claim alleging a violation of the First Amendment right of access, after the court determines the right of access attaches to a particular record or proceeding, a presumption of access arises that may be restricted only if "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14; *accord Planet III*, 947 F.3d at 596; *Bernstein*, 814 F.3d at 144; *Schaefer*, 440 F. Supp. 3d at 559-60. The Defendants carry the burden of establishing both prongs of this test.

56. Here, Defendants' policies that restrict and delay access to new e-filed petitions until after completion of clerk processing and "acceptance" are not essential to preserve higher values and are not narrowly tailored. This is demonstrated by, among other things, the numerous

state and federal courts across the nation that have successfully managed to provide public access to new e-filed civil petitions regardless of whether court staff have completed administrative processing and "accepted" them.

57. These access delays at the respective district courts for the District Clerk Defendants are unnecessary and easily avoidable. Other courts can, and do, provide access to new e-filed civil petitions upon their receipt, regardless of whether those courts route the new filings to virtual queues pending clerk processing and "acceptance," or whether they automatically "accept" them. Courts that provide access to e-filed petitions as they are received, regardless of whether staff have completed clerical processing, include the overwhelming majority of federal district courts and state courts in Alabama, Arizona, California, Connecticut, Florida, Georgia, Hawaii, Iowa, Kansas, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Mexico, New York, Ohio, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, and Washington, DC.

58. Attached as **Exhibit 12** is a document prepared by Courthouse News that identifies state courts that provide on-receipt access to new e-filed civil petitions, including numerous courts using the same Tyler e-filing system and Press Review Tool procured by the OCA and used by numerous Texas district courts. Courthouse News incorporates by reference the information contained in Exhibit 12 as though set forth and alleged fully herein.

59. Courts across the country employ various means of addressing concerns they may have about providing public access to newly filed petitions that have not yet been "accepted" by court staff. Some courts apply watermarks to unprocessed petitions, place disclaimers on websites or public portals, or provide access through secured systems requiring registration and credentials. Courts control online access to new petitions by requiring applications from users, requiring

compliance with terms of use, requiring user names and passwords, retaining the ability to revoke approval if necessary, and, in many courts, requiring payment of a subscription fee.

60. These and other alternative approaches demonstrate the ways courts can more narrowly tailor their practices to address their concerns while at the same time protecting the First Amendment right of access to newly filed civil petitions.

61. Numerous federal courts have considered challenges to nearly identical no-access-before-processing policies in other state courts and concluded the defendant administrators or clerks either failed to satisfy their burdens of justifying their policies under constitutional scrutiny or were not likely to do so. *See Courthouse News Serv. v. Jackson*, 2009 WL 2163609, at *4-5 (S.D. Tex. July 20, 2009) (granting preliminary injunction); *Courthouse News Serv. v. Tingling*, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016) (granting preliminary injunction); *Schaefer*, 440 F.Supp.3d at 562-563 (awarding declaratory judgment after bench trial), aff'd 2 F.4th 318 (2021); *Courthouse News Serv. v. Planet*, 2021 WL 1605216, at *1 (C.D. Cal. Jan. 26, 2021) (entering declaratory judgment and permanent injunction); *Courthouse News Serv. v. Gabel*, 2021 WL 5416650, at *19 (D. Vt. Nov. 19, 2021) (granting permanent injunction), *aff'd in part Corsones*, 131 F.4th 59; *O'Shaughnessy*, 663 F. Supp. 3d at 820 (granting preliminary injunction); *Omundson*, 2024 WL 4349112, at *12 (D. Idaho Sept. 30, 2024) (granting declaratory judgment and permanent injunction), *aff'd* --- F.4th ---, 2026 WL 2603864.

62. Not a single case in which Courthouse News has challenged a no-access-before-processing policy has resulted in any federal oversight or monitoring. The reason for this is simple: state court clerks and administrators can easily cease no-access-before-processing policies by implementing one of the readily available alternatives used by other courts across the nation to provide on-receipt access. They can activate the Auto-Accept functionality in their EFM and

automatically accept non-confidential civil petitions. Alternatively, they can implement a press queue that displays new petitions while they are awaiting processing, such as the Press Review Tool. Once the alternative is implemented, the delays are resolved.

63. Each Defendant has the ability and the authority to permanently solve the problem of delayed access to new civil petitions filed at their courts by implementing one of these alternatives. The "Auto-Accept & Press Review Tool" training materials posted by the OCA on the eFileTexas website confirm that "Auto-Accept Review is a *free* 'out of the box' e-filing function that allows Clerks to *automatically* accept filings based on a set of conditions." *See* Ex. 1, fn. 1 (emph. in original). The materials also confirm that the "*Press Review Tool* is an *OCA-funded (free)* application that works in conjunction with eFileTexas to provide Clerks the option to *grant access* to filings as soon as they are filed (prior to Clerk review)." *See id*. (emph. in original).

64. The current Technology Standards promulgated by the Texas Judicial Council for Information Technology state that "[a]bsent extraordinary circumstances, clerks must accept, return for correction, or reject documents as so authorized on the same business day they are received by the clerk's office and no later than the next business day when circumstances make it impracticable to do so on the same business day." Technology Standards v11.0, § 4.8.3 (Jun. 2026). As a practical matter, however, newly e-filed civil petitions in some district courts routinely remain in the EFM until at least the day after the district clerk receives them and often longer. Fortunately, district clerk staff taking a long time to complete administrative processing of e-filed civil petitions is not problematic as long as the district clerk has implemented the Press Review Tool to enable the press and public to access new petitions irrespective of processing status.

65. As was the case in the paper world, access in e-filing courts is delayed only if courts withhold new civil petitions until after court staff complete administrative processing. Because most courts do not complete these clerical tasks for all the day's new civil actions on the day of filing, no-access-before-processing policies prevent the press and public from learning about a substantial percentage of new civil petitions until at least the day after filing, at which point the information is old news and less likely to capture the public's attention.

66. In Texas, Travis County was the first district court to implement the Press Review Tool, which it implemented in 2022. Dallas County followed when it implemented the Press Review Tool in 2024. Following commencement of this action, Bexar, Brazoria, Brazos, Ellis, El Paso, Hidalgo, Johnson, Midland, Nacogdoches, Nueces, Potter and Taylor counties all agreed to implement the Press Review Tool pursuant to settlements with Courthouse News Service. At each of the aforementioned Texas district courts, the Press Review Tool provides access to new non-confidential civil petitions as they are received by the courts, without delay.

67. Despite Courthouse News' requests, the District Clerk Defendants have not implemented the Press Review Tool or one of the other alternative means used by courts across the nation to provide on-receipt access to new e-filed civil petitions. Instead, the District Clerk Defendants continue to withhold access to new e-filed petitions until after processing. As a result, Courthouse News continues to experience significant delays in access to new civil petitions e-filed in the district courts of the District Clerk Defendants.

**Defendant Staton and Bell County District Court**

68. Courthouse News reports on new civil petitions filed in Bell County District Court in its *Greater Texas Report*, which is delivered to subscribers via e-mail each weekday evening.

69. Courthouse News' reporter for Bell County District Court is Crystal Andresakis. Ms. Andresakis reports on new petitions filed in Bell County District Court each day via the court's website at https://justice.bellcounty.texas.gov/PublicPortal/. Each weekday, Ms. Andresakis accesses the court's website at the URL above and reviews the new civil petitions that have been filed since her last check. She first checks the site for new petitions around or after 2:00 p.m. and checks again after 5:00 p.m.

70. Ms. Andresakis identifies the Bell County petitions most likely to be of interest to Courthouse News' readers and summarizes them for the *Greater Texas Report*. She obtains copies of selected petitions for inclusion with the report.

71. Defendant Staton maintains a policy and practice of withholding public and press access to new civil petitions e-filed in Bell County District Court until after the completion of administrative processing by Bell County District Court staff. Once court staff have completed administrative processing, the petition will be listed on the court's website and typically available for download.

72. While the petition sits in the EFM waiting for Bell County District Court staff to complete administrative processing, there is no way for Courthouse News or the public to know that the petition exists. It is therefore impossible for Ms. Andresakis to request a particular petition that is sitting in the EFM awaiting processing.

73. For example, on Tuesday, October 6, 2026, at 2:39 p.m., SRP Environmental, LLC e-filed a petition in Bell County District Court against G. Owens Enterprises, Inc. Bell County District Court staff did not complete administrative processing for this petition until Thursday, October 8, 2026. Ms. Andresakis, along with the rest of the public, had no way of knowing that this petition existed until October 8, 2026, and therefore could not have requested access to it while

it was sitting in the EFM awaiting processing. Because Bell County District Court withheld the petition for processing, Courthouse News was unable to include this petition in the October 6, 2026,edition of its Greater Texas Report, when the interest of Courthouse News' readers would have been at its highest. Courthouse News' first opportunity to report on this petition was on October 8, 2026, two court days after it had been filed.

74. Courthouse News tracked delays in access to new civil petitions e-filed at Bell County District Court from May 1, 2024 through July 15, 2024. Of the civil petitions e-filed in Bell County District Court during this period, Bell County District Court withheld approximately 40% until at least the day after filing. Approximately 4% were withheld for two or more court days after filing. If measured in calendar days, approximately 8% were withheld for two or more calendar days after filing.

75. More recently, Courthouse News tracked delays in access to new civil petitions e-filed at Bell County District Court from May 4, 2026 through August 28, 2026. Of the civil petitions e-filed in Bell County District Court in this period, Bell County District Court withheld approximately 78% until at least the day after filing. Approximately 27% were withheld for two or more court days after filing. If measured in calendar days, approximately 32% were withheld for two or more calendar days after filing.

76. Defendant Staton has refused to implement the Press Review Tool that is available to Bell County District Court for no charge. She has also refused to configure the e-filing system so that petitions e-filed in Bell County District Court are automatically accepted and not withheld for processing. Had Defendant Staton implemented the Press Review Tool or Auto-Accept alternatives, each of the civil petitions e-filed during the periods referenced above would have been available to Courthouse News on the day of filing.

77. While Defendant Staton's policy and practice of withholding all e-filed civil petitions until after administrative processing remains in place, Courthouse News will remain unable to access and report on a significant percentage of new petitions e-filed in Bell County District Court until at least the day after filing, and often longer.

78. Courthouse News, through Ms. Andresakis, continues to review newly filed civil petitions in Bell County as described above. Courthouse News intends to do so for the foreseeable future.

**Defendant Walker and Burnet County District Court**

79. Courthouse News reports on new civil petitions filed in Burnet County District Court in its *Greater Texas Report*, which is delivered to subscribers via e-mail each weekday evening.

80. Courthouse News' reporter for Burnet County District Court is Crystal Andresakis. Ms. Andresakis reports on new petitions filed in Burnet County District Court each day via the court's website at https://portal-txburnet.tylertech.cloud/ProdPortal/Home/Dashboard/29. Each weekday, Ms. Andresakis accesses the court's website and reviews the new civil petitions that have been filed since her last check. She first checks the site for new petitions around or after 2:00 p.m. and checks again after 5:00 p.m.

81. Ms. Andresakis identifies the Burnet County petitions most likely to be of interest to Courthouse News' readers and summarizes them for the *Greater Texas Report*. She obtains copies of selected petitions for inclusion with the report.

82. Defendant Walker maintains a policy and practice of withholding public and press access to new civil petitions e-filed in Burnet County District Court until after the completion of administrative processing by Burnet County District Court staff. Once court staff have completed

administrative processing, the petitions will be listed on the court's website and typically available for download.

83. While the petition sits in the EFM waiting for Burnet County District Court staff to complete administrative processing, there is no way for Courthouse News or the public to know that the petition exists. It is therefore impossible for Ms. Andresakis to request a particular petition that is sitting in the EFM awaiting processing.

84. For example, on Friday, May 22, 2026, at 7:24 a.m., Tyler Blaine Mason e-filed a petition in Burnet County District Court against Ally Servicing LLC and other defendants. Burnet County District Court staff did not complete administrative processing for this petition until Wednesday, May 27, 2026. Ms. Andresakis, along with the rest of the public, had no way of knowing that this petition existed until May 27, 2026, and therefore could not have requested access to it while it was sitting in the EFM awaiting processing. Because Burnet County District Court withheld the petition for processing, Courthouse News was unable to include this petition in the May 22, 2026 edition of its *Greater Texas Report*, when the interest of Courthouse News' readers would have been at its highest. Courthouse News' first opportunity to report on this petition was on May 27, 2026, two court days (and five calendar days) after it had been filed.

85. Courthouse News tracked delays in access to new civil petitions e-filed at Burnet County District Court from May 1, 2024 through July 15, 2024. Of the civil petitions e-filed in Burnet County District Court during this period, Burnet County District Court withheld approximately 22% until at least the day after filing. Approximately 2% were withheld for two or more court days after filing. If measured in calendar days, approximately 5% were withheld for two or more calendar days after filing.

86. More recently, Courthouse News tracked delays in access to new civil petitions e-filed at Burnet County District Court from May 4, 2026 through August 28, 2026. Of the civil petitions e-filed in Burnet County District Court in this period, Burnet County District Court withheld approximately 64% until at least the day after filing. Approximately 5% were withheld for two or more court days after filing. If measured in calendar days, approximately 13% were withheld for two or more calendar days after filing.

87. Defendant Walker has refused to implement the Press Review Tool that is available to Burnet County District Court for no charge. She has also refused to configure the e-filing system so that petitions e-filed in Burnet County District Court are automatically accepted and not withheld for processing. Had Defendant Walker implemented the Press Review Tool or Auto-Accept alternatives, each of the civil petitions e-filed during the periods referenced above would have been available to Courthouse News on the day of filing.

88. While Defendant Walker's policy and practice of withholding all e-filed civil petitions until after administrative processing remains in place, Courthouse News will remain unable to access and report on a significant percentage of new petitions e-filed in Burnet County District Court until at least the day after filing, and often longer.

89. Courthouse News, through Ms. Andresakis, continues to review newly filed civil petitions in Burnet County as described above. Courthouse News intends to do so for the foreseeable future.

**Defendant Gould and Collin County District Court**

90. Courthouse News reports on new civil petitions filed in Collin County District Court in its *Tarrant County Report*, which is delivered to subscribers via e-mail each weekday evening.

91. Courthouse News' reporter for Collin County District Court is Heather Preston. Ms. Preston reports on new petitions filed in Collin County District Court each day via a combination of re:SearchTX and the court's website at https://portal-txcollin.tylertech.cloud/PublicAccess/default.aspx. Each weekday, Ms. Preston accesses re:SearchTX and the court's website and reviews the new civil petitions that have been filed since her last check. She begins checking for new petitions in the early afternoon and conducts a final check after 5:00 p.m.

92. Ms. Preston identifies the Collin County petitions most likely to be of interest to Courthouse News' readers and summarizes them for the *Tarrant County Report*. She obtains copies of selected petitions for inclusion with the report.

93. Defendant Gould maintains a policy and practice of withholding public and press access to new civil petitions e-filed in Collin County District Court until after the completion of administrative processing by Collin County District Court staff. Once court staff have completed administrative processing, the petition will be listed on re:SearchTX and the court's website and typically available for download.

94. While the petition sits in the EFM waiting for Collin County District Court staff to complete administrative processing, there is no way for Courthouse News or the public to know that the petition exists. It is therefore impossible for Ms. Preston to request a particular petition that is sitting in the EFM awaiting processing.

95. For example, on Friday, July 24, 2026, at 2:15 p.m., the City of McKinney, Texas e-filed a petition in Collin County District Court against the City of Melissa, Texas. Collin County District Court staff did not complete administrative processing for this petition until Monday, July 27, 2026. Ms. Preston, along with the rest of the public, had no way of knowing that this petition

existed until July 27, 2026, and therefore could not have requested access to it while it was sitting in the EFM awaiting processing. Because Collin County District Court withheld the petition for processing, Courthouse News was unable to include this petition in the July 24, 2026, edition of its *Tarrant County Report*, when the interest of Courthouse News' readers would have been at its highest. Courthouse News' first opportunity to report on this petition was on July 27, 2026, the next court day (and three calendar days) after it had been filed.

96. Courthouse News tracked delays in access to new civil petitions e-filed at Collin County District Court from January 1, 2024 to April 15, 2024. Of the civil petitions e-filed in Collin County District Court in this period, Collin County District Court withheld approximately 70% until at least the day after filing. Approximately 17% were withheld for two or more court days after filing. If measured in calendar days, approximately 29% were withheld for two or more calendar days after filing.

97. More recently, Courthouse News tracked delays in access to new civil petitions e-filed at Collin County District Court from May 4, 2026 through August 28, 2026. Of the civil petitions e-filed in Collin County District Court during this period, Collin County District Court withheld approximately 90% until at least the day after filing. Approximately 21% were withheld for two or more court days after filing. If measured in calendar days, approximately 31% were withheld for two or more calendar days after filing.

98. Defendant Gould has refused to implement the Press Review Tool that is available to Collin County District Court for no charge. He has also refused to configure the e-filing system so that petitions e-filed in Collin County District Court are automatically accepted and not withheld for processing. Had Defendant Gould implemented the Press Review Tool or Auto-Accept

alternatives, each of the civil petitions e-filed during the periods referenced above would have been available to Courthouse News on the day of filing.

99. While Defendant Gould's policy and practice of withholding all e-filed civil petitions until after administrative processing remains in place, Courthouse News will remain unable to access and report on a significant percentage of new petitions e-filed in Collin County District Court until at least the day after filing, and often longer.

100. Courthouse News, through Ms. Preston, continues to review newly filed civil petitions in Collin County as described above. Courthouse News intends to do so for the foreseeable future.

**Defendant Trantham and Denton County District Court**

101. Courthouse News reports on new civil petitions filed in Denton County District Court in its *Tarrant County Report*, which is delivered to subscribers via e-mail each weekday evening.

102. Courthouse News' reporter for Denton County District Court is Bonnie Barron. Ms. Barron reports on new petitions filed in Denton County District Court each day via a combination of re:SearchTX and the court's website at https://justice1.dentoncounty.gov/PublicAccess/default.aspx. Each weekday, Ms. Barron accesses re:SearchTX and the court's website and reviews the new civil petitions that have been filed since her last check. She begins checking for new petitions in the early afternoon and conducts a final check after 5:00 p.m.

103. Ms. Barron identifies the Denton County petitions most likely to be of interest to Courthouse News' readers and summarizes them for the *Tarrant County Report*. She obtains copies of selected petitions for inclusion with the report.

104. Defendant Trantham maintains a policy and practice of withholding public and press access to new civil petitions e-filed in Denton County District Court until after the completion of administrative processing by Denton County District Court staff. Once court staff have completed administrative processing, the petition will be listed on re:SearchTX and the court's website and typically available for download.

105. While the petition sits in the EFM waiting for Denton County District Court staff to complete administrative processing, there is no way for Courthouse News or the public to know that the petition exists. It is therefore impossible for Ms. Barron to request a particular petition that is sitting in the EFM awaiting processing.

106. For example, on Thursday, July 30, 2026, at 1:13 p.m., Treeline Water Well, LLC e-filed a petition in Denton County District Court against North Texas Groundwater Conservation District and its board of directors in their official capacities. Denton County District Court staff did not complete administrative processing for this petition until Monday, August 3, 2026. Ms. Barron, along with the rest of the public, had no way of knowing that this petition existed until August 3, 2026, and therefore could not have requested access to it while it was sitting in the EFM awaiting processing. Because Denton County District Court withheld the petition for processing, Courthouse News was unable to include this petition in the July 30, 2026, edition of its *Tarrant County Report*, when the interest of Courthouse News' readers would have been at its highest. Courthouse News' first opportunity to report on this petition was on August 3, 2026, two court days (and four calendar days) after it had been filed.

107. Courthouse News tracked delays in access to new civil petitions e-filed at Denton County District Court from January 1, 2024 through April 15, 2024. Of the civil petitions e-filed in Denton County District Court during this period, Denton County District Court withheld

approximately 51% until at least the day after filing. Approximately 4% were withheld for two or more court days after filing. If measured in calendar days, approximately 12% were withheld for two or more calendar days after filing.

108. More recently, Courthouse News tracked delays in access to new civil petitions e-filed at Denton County District Court from May 4, 2026 through August 28, 2026. Of the civil petitions e-filed in Denton County District Court during this period, Denton County District Court withheld approximately 47% until at least the day after filing. Approximately 6% were withheld for two or more court days after filing. If measured in calendar days, approximately 12% were withheld for two or more calendar days after filing.

109. Defendant Trantham has refused to implement the Press Review Tool that is available to Denton County District Court for no charge. He has also refused to configure the e-filing system so that petitions e-filed in Denton County District Court are automatically accepted and not withheld for processing. Had Defendant Trantham implemented the Press Review Tool or Auto-Accept alternatives, each of the civil petitions e-filed during the periods referenced above would have been available to Courthouse News on the day of filing.

110. While Defendant Trantham's policy and practice of withholding all e-filed civil petitions until after administrative processing remains in place, Courthouse News will remain unable to access and report on a significant percentage of new petitions e-filed in Denton County District Court until at least the day after filing, and often longer.

111. Courthouse News, through Ms. Barron, continues to review newly filed civil petitions in Denton County as described above. Courthouse News intends to do so for the foreseeable future.

**Defendant Webster and Ector County District Court**

112. Courthouse News reports on new civil petitions filed in Ector County District Court in its *Greater Texas Report*, which is delivered to subscribers via e-mail each weekday evening.

113. Courthouse News' reporter for Ector County District Court is Crystal Andresakis. Ms. Andresakis reports on new petitions filed in Ector County District Court each day via re:SearchTX. Each weekday, Ms. Andresakis accesses re:SearchTX and reviews the new civil petitions that have been filed since her last check. She first checks the site for new petitions around or after 2:00 p.m. and checks again after 5:00 p.m.

114. Ms. Andresakis identifies the Ector County petitions most likely to be of interest to Courthouse News' readers and summarizes them for the *Greater Texas Report*. She obtains copies of selected petitions for inclusion with the report.

115. Defendant Webster maintains a policy and practice of withholding public and press access to new civil petitions e-filed in Ector County District Court until after the completion of administrative processing by Ector County District Court staff. Once court staff have completed administrative processing, the petition will be listed on the re:SearchTX website and typically available for download.

116. While the petition sits in the EFM waiting for Ector County District Court staff to complete administrative processing, there is no way for Courthouse News or the public to know that the petition exists. It is therefore impossible for Ms. Andresakis to request a particular petition that is sitting in the EFM awaiting processing.

117. For example, on Thursday, October 8, 2026, at 2:58 p.m., Richard Zachary Hendricks e-filed a petition in Ector County District Court against Barnhart Bolt & Special Fasteners Inc. and another defendant. Ector County District Court staff did not complete

administrative processing for this petition until Friday, October 9, 2026. Ms. Andresakis, along with the rest of the public, had no way of knowing that this petition existed until October 9, 2026, and therefore could not have requested access to it while it was sitting in the EFM awaiting processing. Because Ector County District Court withheld the petition for processing, Courthouse News was unable to include this petition in the October 8, 2026, edition of its Greater Texas Report, when the interest of Courthouse News' readers would have been at its highest. Courthouse News' first opportunity to report on this petition was on October 9, 2026, the day after it had been filed.

118. Courthouse News tracked delays in access to new civil petitions e-filed at Ector County District Court from May 1, 2024 through July 15, 2024. Of the civil petitions e-filed in Ector County District Court during this period, Ector County District Court withheld approximately 56% until at least the day after filing. Approximately 11% were withheld for two or more court days after filing. If measured in calendar days, approximately 20% were withheld for two or more calendar days after filing.

119. More recently, Courthouse News tracked delays in access to new civil petitions e-filed at Ector County District Court from May 4, 2026 through August 28, 2026. Of the civil petitions e-filed in Ector County District Court during this period, Ector County District Court withheld approximately 97% until at least the day after filing. Approximately 42% were withheld for two or more court days after filing. If measured in calendar days, approximately 49% were withheld for two or more calendar days after filing.

120. Defendant Webster has refused to implement the Press Review Tool that is available to Ector County District Court for no charge. She has also refused to configure the e-filing system so that petitions e-filed in Ector County District Court are automatically accepted

and not withheld for processing. Had Defendant Webster implemented the Press Review Tool or Auto-Accept alternatives, each of the civil petitions e-filed during the periods referenced above would have been available to Courthouse News on the day of filing.

121. While Defendant Webster's policy and practice of withholding all e-filed civil petitions until after administrative processing remains in place, Courthouse News will remain unable to access and report on a significant percentage of new petitions e-filed in Ector County District Court until at least the day after filing, and often longer.

122. Courthouse News, through Ms. Andresakis, continues to review newly filed civil petitions in Ector County as described above. Courthouse News intends to do so for the foreseeable future.

**Defendant Kinard and Galveston County District Court**

123. Courthouse News reports on new civil petitions filed in Galveston County District Court in its *Greater Houston Report*, which is delivered to subscribers via e-mail each weekday evening.

124. Courthouse News' reporter for Galveston County District Court is Heather Preston. Ms. Preston reports on new petitions filed in Galveston County District Court each day via a combination of re:SearchTX and the court's website at https://portalnav19.galvestoncountytx.gov/portal. Each weekday, Ms. Preston accesses re:SearchTX and the court's website and reviews the new civil petitions that have been filed since her last check. She begins checking for new petitions in the early afternoon and conducts a final check after 5:00 p.m.

125. Ms. Preston identifies the Galveston County petitions most likely to be of interest to Courthouse News' readers and summarizes them for the *Greater Houston Report*. She obtains copies of selected petitions for inclusion with the report.

126. Defendant Kinard maintains a policy and practice of withholding public and press access to new civil petitions e-filed in Galveston County District Court until after the completion of administrative processing by Galveston County District Court staff. Once court staff have completed administrative processing, the petition will be listed on re:SearchTX and the court's website and typically available for download.

127. While the petition sits in the EFM waiting for Galveston County District Court staff to complete administrative processing, there is no way for Courthouse News or the public to know that the petition exists. It is therefore impossible for Ms. Preston to request a particular petition that is sitting in the EFM awaiting processing.

128. For example, on Tuesday, September 29, 2026, at 8:42 a.m., Tyler Immer e-filed a petition in Galveston County District Court against Texas-New Mexico Power Company. Galveston County District Court staff did not complete administrative processing for this petition until Wednesday, September 30, 2026. Ms. Preston, along with the rest of the public, had no way of knowing that this petition existed until September 30, 2026, and therefore could not have requested access to it while it was sitting in the EFM awaiting processing. Because Galveston County District Court withheld the petition for processing, Courthouse News was unable to include this petition in the September 29, 2026, edition of its *Greater Houston Report*, when the interest of Courthouse News' readers would have been at its highest. Courthouse News' first opportunity to report on this petition was on September 30, 2026, the day after it had been filed.

129. Courthouse News tracked delays in access to new civil petitions e-filed at Galveston County District Court from May 1, 2024 through July 15, 2024. Of the civil petitions e-filed in Galveston County District Court during this period, Galveston County District Court withheld approximately 25% until at least the day after filing. Approximately 5% were withheld for two or more court days after filing. If measured in calendar days, approximately 6% were withheld for two or more calendar days after filing.

130. More recently, Courthouse News tracked delays in access to new civil petitions e-filed at Galveston County District Court from May 4, 2026 through August 28, 2026. Of the civil petitions e-filed in Galveston County District Court during this period, Galveston County District Court withheld approximately 95% until at least the day after filing. Approximately 19% were withheld for two or more court days after filing. If measured in calendar days, approximately 30% were withheld for two or more calendar days after filing.

131. Defendant Kinard has refused to implement the Press Review Tool that is available to Galveston County District Court for no charge. He has also refused to configure the e-filing system so that petitions e-filed in Galveston County District Court are automatically accepted and not withheld for processing. Had Defendant Kinard implemented the Press Review Tool or Auto-Accept alternatives, each of the civil petitions e-filed during the periods referenced above would have been available to Courthouse News on the day of filing.

132. While Defendant Kinard's policy and practice of withholding all e-filed civil petitions until after administrative processing remains in place, Courthouse News will remain unable to access and report on a significant percentage of new petitions e-filed in Galveston County District Court until at least the day after filing, and often longer.

133. Courthouse News, through Ms. Preston, continues to review newly filed civil petitions in Galveston County as described above. Courthouse News intends to do so for the foreseeable future.

**Defendant Smith and Jefferson County District Court**

134. Courthouse News reports on new civil petitions filed in Jefferson County District Court in its *Beaumont Report*, which is delivered to subscribers via e-mail each weekday evening.

135. Courthouse News' reporter for Jefferson County District Court is Jeremy Choate. Mr. Choate reports on new petitions filed in Jefferson County District Court each day via re:SearchTX. Each weekday, Mr. Choate accesses re:SearchTX and reviews the new civil petitions that have been filed since his last check. He begins checking for new petitions in the early afternoon and conducts a final check after 5:00 p.m.

136. Mr. Choate identifies the Jefferson County petitions most likely to be of interest to Courthouse News' readers and summarizes them for the *Beaumont Report*. He obtains copies of selected petitions for inclusion with the report.

137. Defendant Smith maintains a policy and practice of withholding public and press access to new civil petitions e-filed in Jefferson County District Court until after the completion of administrative processing by Jefferson County District Court staff. Once court staff have completed administrative processing, the petition will be listed on the re:SearchTX website and typically available for download.

138. While the petition sits in the EFM waiting for Jefferson County District Court staff to complete administrative processing, there is no way for Courthouse News or the public to know that the petition exists. It is therefore impossible for Mr. Choate to request a particular petition that is sitting in the EFM awaiting processing.

139. For example, on Monday, July 20, 2026, at 1:30 p.m., Kimberly Sonnier e-filed a petition in Jefferson County District Court against Christus Health and Christus Southeast Texas Physician Hospital Organization. Jefferson County District Court staff did not complete administrative processing for this petition until Thursday, July 23, 2026. Mr. Choate, along with the rest of the public, had no way of knowing that this petition existed until July 23, 2026, and therefore could not have requested access to it while it was sitting in the EFM awaiting processing. Because Jefferson County District Court withheld the petition for processing, Courthouse News was unable to include this petition in the July 20, 2026, edition of its *Beaumont Report*, when the interest of Courthouse News' readers would have been at its highest. Courthouse News' first opportunity to report on this petition was on July 23, 2026, three court days after it had been filed.

140. Courthouse News tracked delays in access to new civil petitions e-filed at Jefferson County District Court from May 17, 2024 through July 15, 2024. Of the civil petitions e-filed in Jefferson County District Court during this period, Jefferson County District Court withheld approximately 23% until at least the day after filing. Approximately 4% were withheld for two or more court days after filing. If measured in calendar days, approximately 6% were withheld for two or more calendar days after filing.

141. More recently, Courthouse News tracked delays in access to new civil petitions e-filed at Jefferson County District Court from May 4, 2026 through August 28, 2026. Of the civil petitions e-filed in Jefferson County District Court during this period, Jefferson County District Court withheld approximately 96% until at least the day after filing. Approximately 35% were withheld for two or more court days after filing. If measured in calendar days, approximately 45% were withheld for two or more calendar days after filing.

142. Defendant Smith has refused to implement the Press Review Tool that is available to Jefferson County District Court for no charge. He has also refused to configure the e-filing system so that petitions e-filed in Jefferson County District Court are automatically accepted and not withheld for processing. Had Defendant Smith implemented the Press Review Tool or Auto-Accept alternatives, each of the civil petitions e-filed during the periods referenced above would have been available to Courthouse News on the day of filing.

143. While Defendant Smith's policy and practice of withholding all e-filed civil petitions until after administrative processing remains in place, Courthouse News will remain unable to access and report on a significant percentage of new petitions e-filed in Jefferson County District Court until at least the day after filing, and often longer.

144. Courthouse News, through Mr. Choate, continues to review newly filed civil petitions in Jefferson County as described above. Courthouse News intends to do so for the foreseeable future.

**Defendant Strother and McLennan County District Court**

145. Courthouse News reports on new civil petitions filed in McLennan County District Court in its *Greater Texas Report*, which is delivered to subscribers via e-mail each weekday evening.

146. Courthouse News' reporter for McLennan County District Court is Crystal Andresakis. Ms. Andresakis reports on new petitions filed in McLennan County District Court each day via re:SearchTX. Each weekday, Ms. Andresakis accesses re:SearchTX and reviews the new civil petitions that have been filed since her last check. She begins checking for new petitions in the early afternoon and conducts a final check after 5:00 p.m.

147. Ms. Andresakis identifies the McLennan County petitions most likely to be of interest to Courthouse News' readers and summarizes them for the *Greater Texas Report*. She obtains copies of selected petitions for inclusion with the report.

148. Defendant Strother maintains a policy and practice of withholding public and press access to new civil petitions e-filed in McLennan County District Court until after the completion of administrative processing by McLennan County District Court staff. Once court staff have completed administrative processing, the petition will be listed on the re:SearchTX website and typically available for download.

149. While the petition sits in the EFM waiting for McLennan County District Court staff to complete administrative processing, there is no way for Courthouse News or the public to know that the petition exists. It is therefore impossible for Ms. Andresakis to request a particular petition that is sitting in the EFM awaiting processing.

150. For example, on Monday, August 10, 2026, at 4:37 p.m., Archie Hatten e-filed a petition in McLennan County District Court against STI Performance, Inc. dba FedEx Ground, Federal Express Corporation, and another defendant. McLennan County District Court staff did not complete administrative processing for this petition until Monday, August 17, 2026. Ms. Andresakis, along with the rest of the public, had no way of knowing that this petition existed until August 17, 2026, and therefore could not have requested access to it while it was sitting in the EFM awaiting processing. Because McLennan County District Court withheld the petition for processing, Courthouse News was unable to include this petition in the August 10, 2026, edition of its *Greater Texas Report*, when the interest of Courthouse News' readers would have been at its highest. Courthouse News' first opportunity to report on this petition was on August 17, 2026, five court days (and seven calendar days) after it had been filed.

151. Courthouse News tracked delays in access to new civil petitions e-filed at McLennan County District Court from May 1, 2024 through July 15, 2024. Of the civil petitions e-filed in McLennan County District Court during this period, McLennan County District Court withheld approximately 28% until at least the day after filing. Approximately 3% were withheld for two or more court days after filing. If measured in calendar days, approximately 6% were withheld for two or more calendar days after filing.

152. More recently, Courthouse News tracked delays in access to new civil petitions e-filed at McLennan County District Court from May 4, 2026 through August 28, 2026. Of the civil petitions e-filed in McLennan County District Court during this period, McLennan County District Court withheld approximately 93% until at least the day after filing. Approximately 37% were withheld for two or more court days after filing. If measured in calendar days, approximately 42% were withheld for two or more calendar days after filing.

153. Defendant Strother has refused to implement the Press Review Tool that is available to McLennan County District Court for no charge. He has also refused to configure the e-filing system so that petitions e-filed in McLennan County District Court are automatically accepted and not withheld for processing. Had Defendant Strother implemented the Press Review Tool or Auto-Accept alternatives, each of the civil petitions e-filed during the periods referenced above would have been available to Courthouse News on the day of filing.

154. While Defendant Strother's policy and practice of withholding all e-filed civil petitions until after administrative processing remains in place, Courthouse News will remain unable to access and report on a significant percentage of new petitions e-filed in McLennan County District Court until at least the day after filing, and often longer.

155. Courthouse News, through Ms. Andresakis, continues to review newly filed civil petitions in McLennan County as described above. Courthouse News intends to do so for the foreseeable future.

**Defendant Miller and Montgomery County District Court**

156. Courthouse News reports on new civil petitions filed in Montgomery County District Court in its *Greater Houston Report*, which is delivered to subscribers via e-mail each weekday evening.

157. Courthouse News' reporter for Montgomery County District Court is Heather Preston. Ms. Preston reports on new petitions filed in Montgomery County District Court each day via a combination of re:SearchTX and the court's website at https://odyssey.mctx.org/Secured/Login.aspx?ReturnUrl=%2fsecured%2fdefault.aspx. Each weekday, Ms. Preston accesses re:SearchTX and the court's website at the URL above and reviews the new civil petitions that have been filed since her last check. She begins checking for new petitions in the early afternoon and conducts a final check after 5:00 p.m.

158. Ms. Preston identifies the Montgomery County petitions most likely to be of interest to Courthouse News' readers and summarizes them for the *Greater Houston Report*. She obtains copies of selected petitions for inclusion with the report.

159. Defendant Miller maintains a policy and practice of withholding public and press access to new civil petitions e-filed in Montgomery County District Court until after the completion of administrative processing by Montgomery County District Court staff. Once court staff have completed administrative processing, the petition will be listed on re:SearchTX and the court's website and typically available for download.

160. While the petition sits in the EFM waiting for Montgomery County District Court staff to complete administrative processing, there is no way for Courthouse News or the public to know that the petition exists. It is therefore impossible for Ms. Preston to request a particular petition that is sitting in the EFM awaiting processing.

161. For example, on Thursday, October 8, 2026, at 9:15 a.m., Jaspinder Kaur e-filed a petition in Montgomery County District Court against The Cheesecake Factory Restaurants Inc. Montgomery County District Court staff did not complete administrative processing for this petition until Friday, October 9, 2026. Ms. Preston, along with the rest of the public, had no way of knowing that this petition existed until October 9, 2026, and therefore could not have requested access to it while it was sitting in the EFM awaiting processing. Because Montgomery County District Court withheld the petition for processing, Courthouse News was unable to include this petition in the October 8, 2026, edition of its *Greater Houston Report*, when the interest of Courthouse News' readers would have been at its highest. Courthouse News' first opportunity to report on this petition was on October 9, 2026, the day after it had been filed.

162. Courthouse News tracked the delays in access to new civil petitions e-filed at Montgomery County District Court from May 1, 2024 through July 15, 2024. Of the civil petitions e-filed in Montgomery County District Court during this period, Montgomery County District Court withheld approximately 40% until at least the day after filing. Approximately 5% were withheld for two or more court days after filing. If measured in calendar days, approximately 13% were withheld for two or more calendar days after filing.

163. More recently, Courthouse News tracked the delays in access to new civil petitions e-filed at Montgomery County District Court from May 4, 2026 through August 28, 2026. Of the civil petitions e-filed in Montgomery County District Court during this period, Montgomery

County District Court withheld approximately 61% until at least the day after filing. Approximately 12% were withheld for two or more court days after filing. If measured in calendar days, approximately 16% were withheld for two or more calendar days after filing.

164. Defendant Miller has refused to implement the Press Review Tool that is available to Montgomery County District Court for no charge. She has also refused to configure the e-filing system so that petitions e-filed in Montgomery County District Court are automatically accepted and not withheld for processing. Had Defendant Miller implemented the Press Review Tool or Auto-Accept alternatives, each of the civil petitions e-filed during the periods referenced above would have been available to Courthouse News on the day of filing.

165. While Defendant Miller's policy and practice of withholding all e-filed civil petitions until after administrative processing remains in place, Courthouse News will remain unable to access and report on a significant percentage of new petitions e-filed in Montgomery County District Court until at least the day after filing, and often longer.

166. These pervasive and ongoing delays experienced by Courthouse News at each of the District Clerk Defendants' courts materially diminish Courthouse News' ability to deliver timely news about civil litigation to its readers.

167. Courthouse News, through Ms. Preston, continues to review newly filed civil petitions in Montgomery County as described above. Courthouse News intends to do so for the foreseeable future.

**COUNT ONE – VIOLATION OF U.S. CONST. AMEND. I AND 42 U.S.C. § 1983**

168. Courthouse News incorporates the allegations of Paragraphs 1-167 herein.

169. Defendants' actions under color of state law, including without limitation their policies and practices of withholding newly filed, non-confidential civil petitions from press and

public view until after administrative processing, and the resulting denial of timely access to new civil petitions upon receipt for filing, deprive Courthouse News, and by extension its subscribers, of their right of access to public court records secured by the First Amendment to the United States Constitution.

170. The qualified First Amendment right to access new civil petitions filed in the district courts of the District Clerk Defendants arises the moment those petitions are filed, and access may be restricted only if the restriction is essential to preserve an overriding government interest and is narrowly tailored to serve that interest. For Defendants' policies and practices to survive *Press-Enterprise II*'s two-prong balancing test, Defendants "must demonstrate that (1) there is a substantial probability that [an overriding government interest] would be impaired by immediate access; and (2) no reasonable alternatives exist to adequately protect that government interest." *New Mexico AOC*, 53 F.4th at 1270 (internal quotations and citations omitted). Defendants cannot satisfy either prong of this test with respect to the policies and practices alleged in this complaint.

171. Courthouse News has no adequate remedy at law to prevent or redress Defendants' unconstitutional actions and will suffer irreparable harm as a result of Defendants' violation of its First Amendment rights. Courthouse News is therefore entitled to a declaratory judgment and a preliminary and permanent injunction to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers.

**PRAYER FOR RELIEF**

WHEREFORE, Courthouse News prays for judgment against Defendants as follows:

1. A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that Defendants' policies and practices that knowingly effect delays in access to newly filed civil petitions,

including, inter alia, their policy and practice of denying access to petitions until after administrative processing, are unconstitutional under the First and Fourteenth Amendments to the United States Constitution because these policies and practices constitute an effective denial of timely public access to new civil petitions, which are public court records to which the First Amendment right of access applies;

2. A preliminary and permanent injunction against Defendants, including their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction or under their control, prohibiting them from continuing their policies and practices that deny Courthouse News timely access to new non-confidential civil petitions, including, inter alia, their policy and practice of denying access to petitions until after administrative processing;

3. An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. All other relief the Court deems just and proper.

Date: October 21, 2026

Respectfully submitted,

**JACKSON WALKER L.L.P.**

*/s/ Matt Dow*

By: Matt Dow
Attorney-In-Charge
Texas Bar No. 06066500
mdow@jw.com
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Telephone: (512) 236-2000
Facsimile: (512) 236-2002

John K. Edwards
Texas Bar No. 24002040
jedwards@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/Jonathan G. Fetterly*
Jonathan G. Fetterly (*Pro Hac Vice*)
jon.fetterly@bclplaw.com
Katherine A. Keating (*Pro Hac Vice*)
katherine.keating@bclplaw.com
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone: (415) 675-3400
Facsimile: (415) 675-3434

ATTORNEYS FOR PLAINTIFF
COURTHOUSE NEWS

**CERTIFICATE OF SERVICE**

I hereby certify that service of the foregoing document will be accomplished through the notice of electronic filing in accordance with the Federal Rules of Civil Procedure on this the 21st day of October, 2026.

*/s/ Matt Dow*
Matt Dow